UNITED STATES of America, Plaintiff–Appellee,

v.

Leo E. KINGSTON, Jr., Defendant–Appellant.

No. 90–6408.

United States Court of Appeals, Tenth Circuit.

July 17, 1992.

David W. Lee, Oklahoma City, Okl., for defendant-appellant.

Arlene Joplin, Asst. U.S. Atty. for the Western District of Oklahoma, Oklahoma City, Okl. (Timothy D. Leonard, U.S. Atty., and Mark A. Yancey, Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Before McKAY, Chief Judge, SETH, Circuit Judge, and FINESILVER, Chief District Judge.[1]

McKAY, Chief Judge.

Appellant Leo E. Kingston, Jr., was named in a fifteen-count indictment on June 5, 1990, in the Western District of Oklahoma. The indictment charged defendant with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; five counts of making false statements and causing false statements to be made and concealing material facts or causing material facts to be concealed, in violation of 18 U.S.C. §§ 1001 and 1002; eight counts of mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1341 and 1342; and one count of equity skimming and aiding and abetting, in violation of 12 U.S.C. § 1709–2 and 18 U.S.C. § 2. A jury returned guilty verdicts on all counts.

These convictions stemmed from Appellant's activities in the real estate business. Appellant was the sole proprietor of Leo E. Kingston Investments, which purchased and sold real property in the Oklahoma

---

1. Honorable Sherman G. Finesilver, Chief Judge, United States District Court for the District of Colorado, sitting by designation.

City area. Some of these properties involved financing guaranteed by the Department of Housing and Urban Development ("HUD") or the Veteran's Administration ("VA"). The charges against Appellant concerned his actions in obtaining such financing and the transfer of those financed properties to another company, E & S Investments, established by Appellant and his wife. Appellant challenges these convictions on a number of grounds.

### Challenges to Evidentiary Rulings

■ We first address defendant's claims that the district court improperly admitted and excluded certain evidence. We may reverse the district court's decision to admit or exclude evidence only if there has been an abuse of discretion. *United States v. Cooper*, 733 F.2d 1360, 1366 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

Appellant claims the district court improperly admitted testimony by loan default counselors about information contained in telephone records. Appellant asserts this evidence was inadmissible under Fed.R.Evid. 901(b)(5) and (6) because he was insufficiently identified as one of the parties to the conversation described in those records.

The testimony at issue consisted of conversations the counselors had with Appellant and his wife regarding the default of properties owned by their company, E & S Investments. Fed.R.Evid. 901(b)(6) requires authentication or identification of the parties participating in a telephone conversation in order for the substance of such a conversation to be admissible as evidence. Appellant asserts that the required authentication was lacking and, thus, admission of the substance of the telephone conversations constitutes reversible error.

As evidence of authentication, one of the loan counselors testified that in pursuing a delinquent E & S Investments account, she called the telephone number given for E & S Investments and left a message on the company's answering machine. R.Vol. VIII at 227. That message prompted a return call from a person informing the loan counselor that the proper person to reach concerning the delinquent account was a Mr. Kingston at the telephone number 405–949–2866. *Id.* at 228. The loan counselor called that telephone number and reached a person who identified himself as Mr. Kingston. *Id.* at 228–29. When the loan counselor advised Mr. Kingston of the delinquency of the account, Mr. Kingston responded that he managed the property at issue, but did not have any ownership responsibilities. *Id.* at 229. Mr. Kingston then refused to divulge any more information regarding the property. *Id.* at 230. Another loan counselor testified that she spoke with a person reached at that same number who stated that Mr. Kingston owned the property. *Id.* at 234. Although the loan counselor testified that the person she spoke with was Mr. Kingston's wife, the record is unclear as to what facts led the loan counselor to believe the speaker was Mrs. Kingston.

■ A split of authority exists among the circuits as to whether self-identification alone is sufficient to establish the identity of a party to a telephone conversation where that party is called at a place where he or she could reasonably be expected to be reached. *See, e.g., United States v. Puerta Restrepo*, 814 F.2d 1236, 1239 (7th Cir.1987) (self-identification by a speaker alone is not sufficient authentication); *O'Neal v. Morgan*, 637 F.2d 846, 850 (2d Cir.1980), *cert. denied*, 451 U.S. 972, 101 S.Ct. 2050, 68 L.Ed.2d 351 (1981) (self-identification sufficient where person is called at a place where he reasonably could be expected to be). However, where such self-identification is coupled with additional circumstantial evidence that shows the person answering to be the person called, sufficient authentication exists. *United States v. Orozco–Santillan*, 903 F.2d 1262, 1266 (9th Cir.1990); *United States v. Pruitt*, 702 F.2d 152, 155 (8th Cir.1983).

■ We conclude the government supplemented the self-identification of Mr. Kingston with enough circumstantial evidence to sufficiently identify Appellant as the party called. As discussed above, the government provided evidence that one of

the loan counselors was told that Appellant could be reached at a specific telephone number and that he was the one to speak with about specific property in default. The loan counselor called that number and reached a person who identified himself as Appellant. The person identifying himself as Appellant was familiar with the specific property at issue. Furthermore, another loan counselor called the telephone number given for Appellant and reached a person who stated specifically that Appellant owned the property at issue. We conclude that, in the face of this evidence, the district court did not abuse its discretion in allowing testimony on telephone conversations it deemed properly authenticated.

■ Appellant further claims that the evidence of the telephone conversation was inadmissible as hearsay because the government witnesses were testifying based on notes taken during their telephone conversations rather than from memory. The district court held that the notes from which these witnesses testified qualified as business records under Federal Rule of Evidence 803(6). R.Vol. VIII at 225. We affirm that holding. The government established at trial that the notes were contemporaneous with the conversation, were part of the regular course of the loan counselors' business, and otherwise qualified as a business record under Rule 803(6). Therefore, the district court did not abuse its discretion in ruling that the notes qualify as an exception to the hearsay rule.

■ Appellant next argues that the trial court committed reversible error when it refused to prohibit government witnesses from presenting testimony concerning a HUD policy prohibiting a borrower of HUD-insured funds from using money other than his or her own to cover costs referred to in the settlement statement. Appellant claims there is no statute or regulation which requires purchasers of HUD-financed homes to pay for all charges and fees out of their own funds, but that three government witnesses nevertheless testified that it was HUD policy to do so. Appellant asserts that these statements were inadmissible legal conclusions. Appellant also asserts that these statements were prejudicial misstatements of law which are unsupported by any federal statute, regulation, or handbook.

The district court denied defendant's motion in limine to exclude such testimony and overruled repeated objections made by defendant's counsel during the trial. Under the abuse of discretion standard, we will only reverse a trial court's decision on the admissibility of evidence where "we are left with 'a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *United States v. Young*, 952 F.2d 1252, 1259 (10th Cir.1991) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)).

The charges at issue here, counts two and five of the indictment, involve making a false statement to a government agent in violation of 18 U.S.C. § 1001. Specifically, Appellant was charged with causing to be falsely stated on two HUD Certificates of Commitment that a Ms. Million had paid certain charges and fees relating to the purchase of real property from her own funds.

■ The elements of 18 U.S.C. § 1001 "are 1) that the defendant made a statement, 2) that the statement was false and the defendant knew it was false, 3) the statement was made knowingly and willfully, 4) the statement was within the jurisdiction of the federal agency, and 5) the statement was material." *United States v. Fitzgibbon*, 619 F.2d 874, 879 (10th Cir. 1980). Appellant is correct that lay witnesses and even expert witnesses are not permitted to give opinions as to what the law is. *See Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989). Government witnesses are permitted, however, to testify as to whether certain truths, if known, would have influenced their decisionmaking for purposes of 18 U.S.C. § 1001. The government witnesses in this case were not testifying as to the law regarding HUD and VA loans. Rather, they were testifying as to the materiali-

ty of the false statements caused to be made by Appellant. In other words, the government was attempting to show that had the witnesses charged with administering the loans in question known that Ms. Million in fact had not paid for the charges and fees incident to the purchase of the property in question out of her own funds, they would not have permitted her to take out the loans.

Because the witnesses were testifying as to the materiality of the false statements caused to be made by defendant and not as to the law regarding HUD and VA loans, we hold that the district court did not abuse its discretion in admitting the testimony.

■■■ Appellant also contends that the district court erred in excluding evidence concerning Oklahoma law on rents and assignment of rents clauses. Appellant asserts that the evidence was probative of his guilt on charges of equity skimming in violation of 12 U.S.C. § 1709–2. Under the equity skimming statute, borrowers may not use rents collected on HUD and VA properties for their own use while failing to make loan payments. Appellant argues that evidence excluded by the district court would have shown that under Oklahoma law rents belong to the mortgagor unless the mortgagee has taken affirmative steps to direct that rents be paid to the mortgagee and that assignment of rents clauses, such as those used in the HUD and VA mortgages executed by the Appellant, are void. Appellant contends that the Oklahoma law at issue negated the requirement that he pay HUD and VA loan payments before using rents from HUD- and VA-insured properties for his own use. Thus, Appellant argues that such evidence tended to support the conclusion that he did not have the required intent to defraud necessary for a conviction under 12 U.S.C. § 1709–2.

However, if a state statute impairs the operations of a federal statute, the state statute must give way. *Los Alamos School Bd. v. Wugalter,* 557 F.2d 709, 713 (10th Cir.1977), *cert. denied,* 434 U.S. 968, 98 S.Ct. 512, 54 L.Ed.2d 455 (1977). The trial court excluded the evidence because of the confusion it could have created in the minds of the jury regarding the supremacy of federal law over state law where each is in direct conflict with the other. We find no abuse of discretion in the district court's exclusion of this evidence.

■■■ Appellant next contends that testimony that a transaction in which defendant participated involved a "straw-buyer" was unduly prejudicial and that such references should have been excluded by the district court. Appellant made a motion in limine to prevent the government from referring to the individuals he asked to purchase properties on his behalf as "straw-buyers." Following a hearing, the district court denied that motion. The district court agreed with the government that the terms "straw-buyer" or "straw-seller" are not inherently prejudicial because "straw-buyers" and "straw-sellers" are not necessarily criminals. R.Vol. IV at 2–3. However, the district court did require that if those terms were to be used by government witnesses, they must first be explained. *Id.*

Consistent with this requirement, the government witness presented a neutral definition of the term "straw-buyer" prior to using the term. This definition did not equate the term "straw-buyer" with one engaging in criminal conduct or otherwise imply that being a "straw-buyer" in some way violated the law.[2] R.Vol. IX at 141–42. Instead, the government witness defined a "straw-buyer" as one who "take[s] title to a piece of property for a short period of time and also obtain[s] a loan on that piece of property, all for the benefit of another." *Id.* at 141.

---

**2.** We note that this court occasionally uses similar terms referring not to criminal conduct but to conduct in which a party had only a nominal interest in a right or property. *See, e.g., Hackney v. Newman Memorial Hosp., Inc.,* 621 F.2d 1069, 1071 (10th Cir.), *cert. denied,* 449 U.S. 982,

101 S.Ct. 397, 66 L.Ed.2d 244 (1980); *Baldridge v. Hadley,* 491 F.2d 859, 864 (10th Cir.), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2608, 41 L.Ed.2d 214 (1974); *Pacific Royalty Co. v. Williams,* 227 F.2d 49, 57 (10th Cir.1955), *cert. denied,* 351 U.S. 951, 76 S.Ct. 847, 100 L.Ed. 1474 (1956).

In this case, Appellant paid others to obtain financing for properties in which they had little or no actual interest. For example, Ms. Million, Mr. Buratti, and Mr. Grimes all received cash payments from Appellant to act as title holders of certain properties when in fact they had little or no actual ownership interest in those properties. R.Vol. VI at 37–38, 168–70; R.Vol. VII at 37–38, 46–48, 69–70, 84–85, 109, 114; R.Vol. VIII at 7, 12–15. Therefore, we cannot hold that the district court abused its discretion by allowing the use of a neutrally defined term which accurately described Appellant's conduct.

After analyzing Appellant's challenges to evidentiary rulings made by the district court, we conclude that they do not provide grounds for reversal.

### Challenges to the Sufficiency of Evidence

■ Appellant challenges the sufficiency of the evidence on which several of his convictions were based. The standard of review for such claims is whether there has been sufficient evidence presented to support a rational jury's finding that defendant is guilty beyond a reasonable doubt. *United States v. McIntyre*, 836 F.2d 467, 471–72 (10th Cir.1987).

Appellant first asserts that there was insufficient evidence to support his conviction for the crime of false statement under 18 U.S.C. § 1001 with regard to counts two and five of the indictment. Specifically, Appellant was charged with causing Ms. Million to make false assertions of fact on HUD loan forms by stating that she had furnished the earnest money and closing costs for the two HUD-financed loans she obtained on Appellant's behalf in order to appear to purchase two properties from Appellant. In response, Appellant claims that the pertinent HUD loan forms do not contain false statements because there is

no statute or regulation requiring that the purchaser of a HUD-financed home pay the earnest money and closing costs out of his or her own funds. Therefore, Appellant could not have had the requisite intent to violate the law necessary to support a conviction under 18 U.S.C. § 1001. We disagree.

■ As outlined above, to support a conviction under § 1001, the government must prove that defendant knowingly and willfully made a material false statement within the jurisdiction of a federal agency. *United States v. Fitzgibbon*, 619 F.2d 874, 879 (10th Cir.1980). Whether or not the law required that the purchaser of a HUD-financed home supply the earnest money and closing costs is irrelevant for purposes of § 1001.[3] What is relevant is whether Appellant was aware of the HUD policy which required the purchaser to supply the earnest money and closing costs out of his or her own funds and willfully and knowingly attempted to circumvent that policy by causing Ms. Million to portray the funds as her own on the HUD forms.

■ We conclude that the record contains sufficient evidence that Appellant knew of this policy and caused false statements to be made in order to circumvent that policy to support a rational jury's finding that Appellant violated § 1001. Appellant's knowledge of the pertinent HUD policy can be inferred from his conduct, *United States v. Price*, 795 F.2d 61, 63 (10th Cir.1986) (intent may be inferred from conduct), which suggested an intent to portray the funds used by Ms. Million as her own in order to prevent the loan officers from discovering the true purchaser of the properties.

The record shows that Appellant was both the true buyer and true seller of the properties involved. R.Vol. VII at 93, 104, 110–11. Because of this, Appellant had to

---

**3.** The analogy offered to the district court by the government is helpful here: Title 18 U.S.C. § 1014 prohibits an individual from making a false statement to a federally insured bank for the purpose of influencing that bank's actions. An individual may state to the bank that he owns five condominiums or that he has no other outstanding loans. If that is not true, then a crime has been committed. The crime is not that the person doesn't own five other condominiums or that he has other outstanding loans; the crime is that a false statement has been made. R.Vol. VI at 256–57.

find a straw-buyer since any loan officer would not permit this type of sham purchase. R.Vol. V at 80–81, 86–87, 193–94. Consequently, Appellant convinced Ms. Million to purchase the properties from him with money he supplied to her.[4] R.Vol. VII at 70–71, 77–79, 83. This required Ms. Million to make false statements which she knew to be false, such as that she had paid an earnest money deposit and closing costs with her own funds. R.Vol. VI at 20, 25–26, 58–60; R.Vol. VII at 70–71, 77–78, 83, 105–08. In fact, the evidence shows that Appellant supplied Ms. Million with checks for the necessary amount to cover these fees and costs. Ms. Million deposited these checks into her own account and then wrote checks for the identical amount, thereby falsely representing the source of the funds. R.Vol. VI at 15–18, 20, 25–26, 60. Appellant then compensated Ms. Million for obtaining the loans on his behalf. R.Vol. VI at 26–27, 60–61, 109; R.Vol. VII at 85. This evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that Appellant violated 18 U.S.C. § 1001 as to counts two and five of the indictment.

Appellant next argues that the government presented insufficient evidence with regard to counts three, four, and six of the indictment because there was no legal requirement that a borrower reveal the identity of the true recipient of the proceeds of a HUD or VA loan.

■■■ Appellant was convicted on counts three, four, and six because the jury found that Appellant had concealed or caused to be concealed certain pertinent information from HUD loan officers in violation of 18 U.S.C. § 1001. The essential elements of a § 1001 concealment prosecution are: 1) the defendant knowingly concealed a fact by any trick, scheme, or device; 2) the defendant acted willfully; 3) the fact concealed was material; 4) the subject matter involved was within the jurisdiction of a department or agency of the United States; and 5) the defendant had a legal duty to

disclose the fact concealed. 18 U.S.C. § 1001.

■■■ To establish the § 1001 concealment violation in this case, the government must prove more than Appellant's failure to reveal a material fact. The government must show an affirmative act by which Appellant concealed a material fact. *United ed States v. Shannon*, 836 F.2d 1125, 1129–30 (8th Cir.), *cert. denied*, 486 U.S. 1058, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). Concealment violations relate to the nondisclosure of statements required by statute, government regulation, or form. *United States v. Tobon–Builes*, 706 F.2d 1092, 1096 (11th Cir.1983). A defendant's duty to disclose is established where a government form required a disclosure of concealed information. *United States v. Muntain*, 610 F.2d 964, 971–72 (D.C.Cir.1979).

■■■ The settlement statements signed by Appellant, Mr. Buratti, and Mr. Grimes at the closings required the purchaser and the sellers to certify that the form is a "true and accurate statement of all receipts and disbursements made on my account or by me in this transaction." Gov.Ex. 44, 72, 126. The concealments occurred when the defendant certified that he was paying the purported sellers a sum of money but then received the proceeds himself. The false certifications concealed the fact that the purported sellers, Mr. Buratti and Mr. Grimes, were never the true owners of the properties and thus did not receive proceeds from the real estate transactions, contrary to the certifications on the settlement statements.

Appellant refers to the testimony of various witnesses who testified that the settlement statements did not require information from the sellers about their intended use of the transaction proceeds nor did the settlement statements restrict distribution of the transaction proceeds in any way. This argument misses the point.

The settlement statements required both buyer and seller to certify that the amounts listed were "a true and accurate

---

**4.** As an indication of motive for this conduct, the record shows that Appellant earned $40,000

from one of these transactions. R.Vol. VII at 104.

statement of all receipts and disbursements made on my account or by me in this transaction." Both Mr. Buratti and Mr. Grimes testified that the amounts listed on the Settlement Statements were not true and accurate statements of the receipts and disbursements involved in the transactions. R.Vol. VII at 177–79; R.Vol. VIII at 13, 18. Appellant received the proceeds checks rather than Mr. Buratti or Mr. Grimes.

The government presented evidence showing that Appellant concealed and caused to be concealed the true identity of the person intended to receive the ultimate proceeds of the loan and that the named sellers held the property in name only. Appellant asserts that because there is no legal requirement that the person intended to receive the ultimate proceeds of the loan be identified, he cannot be convicted of violating 18 U.S.C. § 1001. However, the existence of a legal requirement that a statement be made is irrelevant for purposes of 18 U.S.C. § 1001. *See United States v. Irwin*, 654 F.2d 671, 678 (10th Cir.1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982) (holding that "section 1001 prosecutions are not limited to statements which are required to be made by law or regulation"). All that is required is that the government establish each element of the crime. We hold that the government set forth sufficient evidence on each element of a § 1001 violation to support the jury's finding that defendant violated § 1001 beyond a reasonable doubt.

■ Appellant next claims that there was insufficient evidence to support his conviction of equity skimming under 12 U.S.C. § 1709–2. Appellant contends that a rational trier of fact could not have found him guilty of equity skimming beyond a reasonable doubt because there was insufficient evidence of his intent to defraud, which is an essential element of the crime of equity skimming under 12 U.S.C. § 1709–2. We hold that the record contains sufficient evidence of Appellant's intent to defraud to support the jury's finding of guilt beyond a reasonable doubt.

The government presented evidence suggesting that Appellant's belief that the government would not pursue deficiency judgments led him to establish a sham company in order to load the debt of past due mortgage payments onto that company. R.Vol. V at 109–16; R.Vol. X at 34, 197. As a result, Appellant was able to personally collect the rental payments for the properties transferred to the sham company and convert those funds to his own use rather than paying the mortgage payments. R.Vol. VIII at 80; R.Vol. IX at 73–77; R.Vol. X at 206.

Such conduct indicates an intent to defraud. Thus, we hold that a rational trier of fact could find Appellant guilty of equity skimming beyond a reasonable doubt.

We therefore find no merit in Appellant's arguments regarding the sufficiency of the evidence used to convict him on this and other counts of the indictment.

### The Alleged Breach of the Attorney–Client Privilege

■ Appellant claims that the district court improperly denied his motion to dismiss the indictment due to an alleged violation of Appellant's attorney-client privilege. We review the denial of Appellant's motion to dismiss the indictment for an abuse of discretion. *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir.1988).

During the grand jury proceedings which led to Appellant's indictment, the grand jury subpoenaed Oklahoma attorney Rosemary Rogers. The subpoena concerned the identity of the clients Ms. Rogers represented in mortgage foreclosure proceedings, fee arrangements, and methods of payment. R.Supp.Vol. II at doc. 20. In response to questioning before the grand jury, Ms. Rogers asserted Appellant's attorney-client privilege. The following day, Appellant's wife, Paulette Kingston, also named as a defendant in the indictment, appeared before the grand jury and waived her Fifth Amendment rights and her attorney-client privilege. R.Supp.Vol. II at doc. 20. The district court then granted the government's motions to compel the testimony of Ms. Rogers and another attorney, Craig Cole, to the extent the attorney-client privilege had been waived by Paulette

Kingston. *Id.* Both Ms. Rogers and Mr. Cole had consulted with Paulette Kingston and Appellant regarding their real estate transactions. After the indictment was handed down by the grand jury, Appellant moved the district court to dismiss the indictment due to Fifth and Sixth Amendment violations resulting from the questioning of Appellant's attorneys. *Id.* Specifically, Appellant claimed that the questioning of his attorneys by the grand jury violated his Fifth Amendment right against compelled self-incrimination and his Sixth Amendment right to assistance of counsel.

The district court denied the motion, holding that even if Appellant's attorney-client privilege and his Fifth and Sixth Amendment rights had been violated, the indictment would not be dismissed because Appellant had failed to show past prejudice or the likelihood of future prejudice. R.Supp.Vol. II at doc. 39. We hold that the district court did not abuse its discretion in reaching this result.

■■■■ Because it is a drastic step, dismissal of an indictment is a disfavored remedy. *United States v. Rogers*, 751 F.2d 1074, 1076–77 (9th Cir.1985). Therefore, even if Appellant can show that an important privilege or right, such as those asserted here, was violated during the grand jury stage of a criminal prosecution, the indictment will not be dismissed unless Appellant can show prejudice. *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981) ("absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate").

■■■■ In this case, Appellant failed to show that he was prejudiced by the questioning of Mr. Cole and Ms. Rogers before

the grand jury in violation of his Sixth Amendment right to assistance of counsel. Because the Sixth Amendment right to counsel does not attach prior to indictment, *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1493 (10th Cir.1990), Appellant cannot show that he was prejudiced by a Sixth Amendment violation on these facts.

■■■■ Appellant likewise failed to show prejudice resulting from alleged violations of his Fifth Amendment right against self-incrimination *which he claims occurred* when Ms. Rogers and Mr. Cole were questioned before the grand jury. The evidence gleaned from the questioning of Ms. Rogers and Mr. Cole during the grand jury proceedings was not presented by the government at trial. Indeed, the only evidence presented at trial concerning Appellant's discussions with Ms. Rogers and Mr. Cole came through Paulette Kingston's testimony on direct examination and the government's cross-examination of Paulette Kingston, which was properly within the scope of the direct examination.

■■■■ Finally, Appellant has not shown that the alleged breach of the attorney-client privilege itself resulted in prejudice. Unless prejudice is shown, even if Appellant's attorney-client privilege were breached by the questioning of Ms. Rogers and Mr. Cole before the grand jury,[5] such a breach does not bar the prosecution from proceeding altogether; it simply bars the prosecution from presenting the tainted evidence at trial. *United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966) (illegal actions by prosecution leading to evidence do not bar the prosecution from proceeding, rather they require suppression of the illegally ob-

---

**5.** It is unclear whether, in fact, a breach of the attorney-client privilege occurred during the grand jury proceedings. If the evidence relating to Appellant disclosed by Ms. Rogers and Mr. Cole before the grand jury consisted only of revealing Appellant's identity and the source of legal fees, then defendant's attorney-client privilege was not violated. *In re Grand Jury Proceedings*, 906 F.2d 1485, 1488 (10th Cir.1990). Three exceptions to this general rule apply, as dis-

cussed in *In re Grand Jury Proceedings*, 906 F.2d at 1488–95. We need not reach the issue of whether these exceptions do or do not apply because, as stated in the text, Appellant has failed to show prejudice stemming from this alleged violation of the attorney-client privilege. Therefore, regardless of the actuality of the violation, there is no basis for a reversal of the district court's actions.

tained evidence).[6] There is no indication in the record or in the briefs that tainted evidence was presented at trial.[7]

Because Appellant failed to show demonstrable prejudice stemming from the violations he claims occurred when his attorneys were questioned by the grand jury, we AFFIRM the district court's decision to deny Appellant's motion to dismiss the indictment.

### Cumulative Error

Finally, Appellant urges this court to reverse his convictions on all counts of the indictment because of the cumulative nature of the errors committed by the district court. Because we hold that the district court committed no reversible error, we must reject this proposition.

### Sentencing

Appellant also appears to appeal the terms of his sentence. He provides no support for the proposition that his sentences under any or all counts of the indictment were improper. We have found no additional grounds to question the propriety of his sentencing. Consequently, we AFFIRM the district court's sentencing of Appellant.

### Conclusion

Despite Appellant's numerous allegations of error committed by the district court, we hold that none of them have merit. We therefore AFFIRM the convictions and sentences imposed in the proceedings before the district court.

AFFIRMED.

---

6. This also applies in cases of a breach of a defendant's attorney-client privilege. *See, e.g., United States v. Rogers,* 751 F.2d 1074, 1079 (9th Cir.1985).

7. The only evidence presented at trial which may have compromised Appellant's attorney-client privilege was the result of Paulette King-ston's own testimony rather than the questioning of Appellant's attorneys before the grand jury. Appellant did not object to Paulette Kingston's testimony at the time it was given at trial, thus Appellant has waived his right to contest the admission of this testimony. *Young v. Taylor,* 466 F.2d 1329, 1333 n. 1 (10th Cir.1972).