**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 6 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

LIN LYN TRADING, LTD., and
RAYMOND LYNN THOMAS,

      Defendants-Appellees.

No. 96-4126

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 94-CR-168G)**

---

Deborah Watson, Department of Justice (Scott M. Matheson, Jr., United States
Attorney for the District of Utah, and Wayne T. Dance, Assistant United States
Attorney, with her on the briefs), for Plaintiff-Appellant.

Max D. Wheeler, Snow, Christensen & Martineau, Salt Lake City, Utah (James D.
Gilson, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, with him
on the briefs), for Defendants-Appellees.

---

Before **BALDOCK**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**EBEL**, Circuit Judge.

---

**EBEL**, Circuit Judge.

---

As a result of the government's seizure of a notepad containing confidential attorney-client communications, defendants-appellees Raymond Lynn Thomas and Lin Lyn Trading, Ltd., successfully moved for the suppression of evidence and the dismissal of the indictment against them.  The United States appeals.  Because we agree that the district court did not err in suppressing the evidence, but conclude the district court abused its discretion in dismissing the indictment, we affirm in part and reverse in part.

**BACKGROUND**

A tip by a confidential informant in the fall of 1990 led to a Customs investigation of defendant-appellee Lin Lyn Trading, Ltd. ("Lin Lyn"), an import company owned by defendant-appellee Raymond Lynn Thomas ("Thomas") and his wife.[1]  Thomas also served as Lin Lyn's Vice President and Director of Operations.  The informant told Customs agents that Lin Lyn imported plush toys and lace items into the United States, and that the lace items were either not declared or falsely described in Customs entry forms.  Further, the informant alleged that Lin Lyn was importing trademarked toys illegally.  Later in the year, the informant gave Customs incriminating documents sent to Lin Lyn.

---

[1]  We assume the facts in the light most favorable to the appellees, because the government is appealing adverse rulings on the Motion to Suppress and Dismiss.  See United States v. Griffin, 48 F.3d 1147, 1150 (10th Cir. 1995).

- 2 -

In January 1991, Customs agents discovered undeclared lace merchandise in a shipment to Lin Lyn. With the information from the informant and the results of the seizure, Salt Lake City Customs Agent Dale Brua ("Brua") obtained a warrant to search Lin Lyn's business premises. The warrant was executed on February 22, 1991, and a large number of documents was seized. Thomas was advised that he and Lin Lyn were under investigation for violating 18 U.S.C. § 542 (unlawful entry of goods into the United States) and 18 U.S.C. § 545 (smuggling goods into the United States).

On March 29, 1991, Thomas returned to the United States from Asia and was detained by Customs inspectors at the Portland International Airport. After conferring by telephone with Brua about the ongoing investigation of Thomas and Lin Lyn, Portland Customs Agent Keith Seagraves ("Seagraves") inspected the documents Thomas was carrying. The documents included a yellow notepad. Thomas informed Seagraves that the notepad documented Thomas's conversations with his legal counsel. Seagraves copied documents pertinent to the investigation and returned the originals of most of the documents to Thomas, although the notepad was not returned. He also contacted Brua and read him some of the contents of the notepad. Seagraves then decided to seize the notepad, despite the potentially privileged nature of the contents, because it contained information that

indicated Thomas and Lin Lyn had undervalued imported shipments. Seagraves made copies of the notepad and then sent the notepad to Brua.

Soon thereafter, defendants' counsel asked for the return of the notepad. Salt Lake City Assistant United States Attorney Wayne Dance ("AUSA Dance") ordered that the materials received from Seagraves be sealed. By that time, however, the existence of the notepad was common knowledge in the Salt Lake City Customs office. Further, unknown to AUSA Dance, Seagraves had kept copies before mailing the documents. Seagraves's copies remained in the Portland office in an unmarked folder, and they were not sealed. The materials Seagraves sent to Brua remained in Brua's custody until he retired, and then became the responsibility of his replacement, Agent Dennis Grossman ("Grossman"). In addition, on April 4, 1991, Customs refused to return documents from the January seizure because "new evidence" had been received. The district court inferred that the "new evidence" was the material seized from defendants on March 29, 1991.

After the investigation concluded in the summer of 1993, the defendants were notified that to get the notepad back they would have to file a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e). The sealed envelope which contained the notepad and other documents was delivered to the district court after defendants filed a Rule 41(e) motion on August 24,

1993. In November 1993, Grossman was transferred to the Portland Customs office to replace Seagraves.

After a hearing in February 1994, Magistrate Judge Samuel Alba recommended that the Rule 41(e) motion be granted in regards to the notepad because its seizure was unlawful and the government's continued possession of privileged attorney-client communications would cause the defendants irreparable injury. District Judge Dee Benson accepted the recommendation and granted the Rule 41(e) motion on September 7, 1994. The government appealed to this court but voluntarily dismissed the appeal after the Solicitor General refused to give permission to proceed.

Thomas and Lin Lyn were indicted on October 20, 1994 for conspiracy to defraud the United States in violation of 18 U.S.C. § 371, smuggling goods into the United States in violation of 18 U.S.C. § 545, unlawful entry of goods into the United States in violation of 18 U.S.C. § 542, and aiding and abetting the violation of the latter two statutes in violation of 18 U.S.C. § 2. (R. I at 22-49.) On October 25, Thomas's documents were returned to him as directed by the court's September 7, 1994, order.

On January 31, 1996, Thomas and Lin Lyn filed a motion to suppress all evidence seized on March 29, 1991, and thereafter on the theory that the illegally seized notepad became a "roadmap" for the case investigation. The government

responded that it did not intend to introduce any items seized on March 29, 1991, but it contested the suppression of all evidence obtained after that date because it had independent sources for the evidence. When defendants replied to the government's response, they requested for the first time that the indictment be dismissed because the invasions of the attorney-client privilege had interfered with their Sixth Amendment right to counsel.

District Judge J. Thomas Greene held an evidentiary hearing on the motion on February 15 and March 21-22, 1996, and heard oral argument on March 29, 1996. Thomas, Brua, and Grossman were among the witnesses who testified. After Grossman testified, he located in his office the unmarked folder containing the copy of the notepad. The folder had a yellow sticker from Seagraves stating that "Dennis, There is no Portland case on this guy (SLC) he's all yours." Grossman sent the folder and an affidavit explaining the circumstances of its discovery to AUSA Dance, who turned the documents over to the court on March 14, 1996. The district court ordered that Grossman be produced to explain this matter. Grossman again testified on March 22, explaining that in the press of Portland Customs business he had never looked at the file; that following his initial testimony he had remembered the file and thought it might have something to do with this case; and that once he glanced through the folder and saw what it

contained he refrained from further reading any item in the folder and sent the documents to AUSA Dance.

The district court found that Seagraves intentionally seized the notepad with knowledge that it contained privileged information. It found that it was common knowledge among the agents in the Salt Lake City Customs office that the contents of the notepad were allegedly privileged communications containing incriminating statements and general defenses relevant to the Lin Lyn investigation and that it was more likely than not that Grossman and Seagraves had "full discussion" about the notepad's contents. Further, it refused to credit Grossman's testimony regarding his unknowing possession of the unmarked folder. Thus, it found that Customs agents had access to the notepad and used it to conduct their investigation of Thomas and Lin Lyn and that the entire investigation was tainted by the illegal seizure. In addition, the court found that the government had not shouldered its burden of showing independent sources for the information in the indictment. Because of the government's deliberate intrusion into the attorney-client relationship, the court held that defendants' Fifth and Sixth Amendment rights were violated and that the only practicable remedy was dismissal of the indictment.

The government filed a timely motion to reconsider accompanied by further affidavits. In the motion, it argued that the Sixth Amendment right to counsel

was not implicated because the Sixth Amendment had not attached at the time the notepad was seized, and it reiterated through affidavits that the copy of the notepad kept in Portland was not kept knowingly in violation of the court's order nor was that copy of the legal pad utilized in the investigation or prosecution of the defendants. The defendants filed a motion to strike the government's motion. They contended that the government improperly sought to add additional evidence and arguments which should have been submitted during the evidentiary hearing and arguments on defendants' motions. The district court denied the government's motion and granted the defendants' motion to strike. The government now appeals.

## DISCUSSION

The government argues that the seizure of the notepad was not illegal and that the district court imposed unwarranted sanctions, namely the suppression of

all evidence discovered after March 29, 1991, and dismissal of the indictment.[2]

We have jurisdiction under 18 U.S.C. § 3731.

## I. Legality of Seizure

In granting Thomas and Lin Lyn's motion for return of property in 1994,

Judge Benson determined that the seizure of the notepad was illegal. The

government did not appeal that ruling. Further, during argument before the

district court on Thomas and Lin Lyn's motions to suppress evidence and to

dismiss the indictment, the government conceded that Judge Benson had found

that the seizure of the notepad was unlawful and again declined to challenge the

decision. Consequently, the government may not now contest the legality of the

---

[2] Thomas and Lin Lyn have moved to strike portions of the government's appellate brief. Some of the government's appellate arguments stem from its motion to reconsider and the affidavits attached to that motion, materials which were stricken by the district court. Because the materials are not properly in the appellate record, Thomas and Lin Lyn contend, the government may not rely on them on appeal.

We deny the motion to strike portions of the appellant's brief. The better practice would have been for the district court simply to deny the government's motion rather than striking it, but any error here is harmless. It is obvious that the district court considered the motion before denying it and, as shown by our discussion in Section III, we have considered the government's arguments on appeal. See Kennedy v. City of Cleveland, 797 F.2d 297, 305 (6th Cir. 1986); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Further, the district court was justified in ignoring later-submitted evidence that could have been presented during the evidentiary hearing.

seizure of the notepad. Its arguments on this point are waived, and we shall assume that the notepad was seized illegally.[3]

## II. Suppression of Evidence

The government contends that the district court clearly erred in determining that the illegally seized notepad was the basis for the government's investigation of Thomas and Lin Lyn. Rather, it argues, it has independent sources for the information in the indictment. Those sources include the confidential informant and the documents seized during the execution of the search warrant at Lin Lyn's office on February 22, 1991.

"'A district court's ruling on a motion to suppress based upon live testimony at a suppression hearing is accepted unless clearly erroneous or influenced by an incorrect view of the law.'" United States v. Griffin, 48 F.3d 1147, 1150 (10th Cir. 1995) (quoting United States v. Wilson, 36 F.3d 1298, 1303 (5th Cir. 1994)). We review questions of law de novo, taking the evidence in the light most favorable to the party that prevailed in the district court. See id.

---

[3] In addition, we note that Thomas and Lin Lyn, though treated throughout this litigation collectively, are separate legal entities. Consequently we assume that Thomas was present at the attorney-client conference in both his individual capacity and his capacity as an officer and representative of Lin Lyn, and that he was searched in both capacities. Otherwise, Lin Lyn would not have had standing to claim the attorney-client privilege or object to the seizure of materials from Thomas. See Alderman v. United States, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.").

"'Under the "fruit of the poisonous tree" doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality.'" Id. (quoting Hamilton v. Nix, 809 F.2d 463, 465 (8th Cir. 1987)).  The court may nevertheless admit evidence seized illegally, if the government shows that (1) the evidence was obtained from a source that was wholly independent of the illegal conduct, see Segura v. United States, 468 U.S. 796, 805 (1984); (2) that the evidence inevitably would have been discovered despite the illegal activity, see Nix v. Williams, 467 U.S. 431, 444 (1984); or (3) that the link between the illegality and the evidence has "become so attenuated as to dissipate the taint," Nardone v. United States, 308 U.S. 338, 341 (1939).  The government must make its showing by a preponderance of the evidence.  See Nix, 467 U.S. at 444 & n.5.

The government contends that it showed by a preponderance of the evidence that it had an independent source for the evidence against Thomas and Lin Lyn.  During the 1996 evidentiary hearing, the government presented several witnesses, including Agents Brua and Grossman, who testified that generally their investigation did not depend on the notepad and that none of the counts in the indictment were attributable to the information in the notepad.  The district court, however, exercised its prerogative to disbelieve the testimony of the government's witnesses.  Further, nothing in the record indicates that the

government introduced any of the documents seized from Lin Lyn in the February 1991 search. The prosecutor told the district court that the documents existed, but without the documents to compare to the indictment the district court was free to disregard the government's assurances as to the contents of the documents and thus, ultimately, the source of the evidence presented to the grand jury. Finally, the district court was not obliged to consider the nine additional affidavits the government proffered with its motion to reconsider, as there was no reason why the government could not have presented that evidence at the hearing.[4] Because the government failed to shoulder its burden to prove independent sources for the evidence, the district court did not err in suppressing all evidence discovered after March 29, 1991.

## III. Dismissal of the Indictment

Finally, the government argues that dismissal of the indictment is too harsh a sanction for the use of the notepad. We review a district court's decision to

---

[4] On appeal, the government asserts that Agent Seagraves was recovering from a near-fatal auto accident at the time of the hearing and thus could not have testified. However, the record does not indicate that the government informed the district court during the hearing that Seagraves was unavailable or that the government would like to present his testimony but was unable to call him to the stand. In addition, the government's motion to reconsider did not inform the district court that Seagraves had been unavailable previously; that information was proffered only in the government's response to defendants' motion to strike the government's motion to reconsider. Consequently, the district court was not obliged to consider Seagraves's untimely affidavit.

dismiss an indictment for abuse of discretion. See United States v. Lacey, 86 F.3d 956, 971 (10th Cir.), cert. denied, 117 S. Ct. 331 (1996). "Abuse of discretion is established if the district court's adjudication . . . is based upon an error of law or a clearly erroneous finding of fact." Reliance Ins. Co. v. Mast Constr. Co., 84 F.3d 372, 375-76 (10th Cir. 1996). In this case, we find three abuses of the district court's discretion: one in relying on the Sixth Amendment right to counsel where the illegal conduct occurred before the defendants were indicted, a second in not requiring Thomas and Lin Lyn to show prejudice from the government's conduct, and a third in not considering a remedy less drastic than dismissal.

The district court's decision rested primarily on the invasion of defendants' Sixth Amendment right to counsel. The right to counsel, however, attaches only "at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 (1972). The notepad was seized in March 1991, but defendants were not indicted until October 1994. Under these circumstances defendants cannot claim a violation of their Sixth Amendment right to counsel. See United States v. Kingston, 971 F.2d 481, 491 (10th Cir. 1992).

In response to the government's argument in its motion to reconsider that the Sixth Amendment right to counsel had not attached at the time the notepad was seized, the district court stated that the seizure violated the Fourth Amendment and that, because of the use of the tainted evidence, the Sixth Amendment right to counsel was violated immediately upon return of the indictment. In Maine v. Moulton, 474 U.S. 159 (1985), however, the Supreme Court addressed the use of evidence obtained in violation of the Sixth Amendment. It held that evidence obtained by recording the defendant's conversations with a state agent, in which the agent induced the defendant to discuss defense strategy, would not be admissible in a case in which an indictment had already been filed because such conduct violated the Sixth Amendment. See id. at 180. In contrast, the Sixth Amendment would not be offended by the use of the same evidence in cases in which indictments had not been returned. See id. at 180 & n.16. In light of Moulton, we do not agree that the Sixth Amendment was violated immediately upon return of the indictment where the illegal seizure had occurred previously. The district court erred in finding a Sixth Amendment violation in this case.

Given the record of this case, the district court also erred in finding Thomas and Lin Lyn were prejudiced by the government's conduct. Because the district court was not provided with the documents lawfully seized from Lin Lyn's

office on February 22, 1991, and because it refused to consider the affidavits proffered by the government with its motion to reconsider, the record contains little basis on which to conclude that Thomas and Lin Lyn were prejudiced by the seizure of the notepad.  In Kingston, we held that "even if [the defendant] can show that an important privilege or right, such as those asserted here, was violated during the grand jury stage of a criminal prosecution, the indictment will not be dismissed unless [the defendant] can show prejudice."  971 F.2d at 491 (emphasis added).  Kingston makes it clear that before the indictment may be dismissed, it is Thomas and Lin Lyn's burden to show prejudice or a substantial threat thereof, not the government's burden to show lack of prejudice.  This remains the rule even if the government's violation is deliberate.  See United States v. Morrison, 449 U.S. 361, 365 (1981).  Although the district court made a finding that prejudice was presumed because the "taint occurred so early in the investigation that it affected and tainted the entire subsequent investigation," the record simply does not support that finding.[5]

Finally, the district court also held that the conduct of the government agents violated defendants' Fifth Amendment right to due process and a fair trial

_____

[5]  The district court may have predicated its finding of continuing prejudice upon its belief that the defendants' Sixth Amendment rights were violated. However, as we discussed above, the Sixth Amendment is inapplicable in this situation.

because the tainted evidence was "inextricably connected" with the investigation of the case. Consequently, it held that the only practicable remedy was dismissal of the indictment. We believe that the district court's failure to consider alternative adequate remedies was an abuse of its discretion.

"Because it is a drastic step, dismissal of an indictment is a disfavored remedy." Kingston, 971 F.2d at 491 (citing United States v. Rogers, 751 F.2d 1074, 1076-77 (9th Cir.1985)). Before deciding to dismiss a case, a district court must consider whether a lesser sanction would satisfy the competing considerations at issue. See Mobley v. McCormick, 40 F.3d 337, 341 (10th Cir. 1994); Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992). Further, the district court must include its reasoning in the record to enable this court to conduct a meaningful review. Failure to do so constitutes an abuse of discretion. See Mobley, 40 F.3d at 341.

The Supreme Court's approach has been "to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." Morrison, 449 U.S. at 365. "The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." Id. at 366; see also United States v. Blue, 384 U.S. 251, 255 (1966) ("Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, [the defendant]

- 16 -

would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial.").

In this case, the district court did not adequately explain why less extreme sanctions would not suffice to protect the defendants' rights. Under these circumstances, suppression of all evidence obtained after March 29, 1991 would appear to be an adequate remedy. This is not a case in which the independence of the grand jury was so compromised that the proceedings were fundamentally unfair and dismissal is required. See Bank of Nova Scotia v. United States, 487 U.S. 250, 256-57 (1988); see also United States v. Pino, 708 F.2d 523, 530 (10th Cir. 1983) ("An indictment may be dismissed for prosecutorial misconduct which is flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment."). The violation at issue is the illegal seizure of evidence, and the Supreme Court has held that a grand jury may consider evidence seized unconstitutionally as long as the grand jury itself does not violate a constitutional privilege. See United States v. Calandra, 414 U.S. 338, 344-46 (1974); Costello v. United States, 350 U.S. 359, 363 (1956). Additionally, although the prosecution did not persuade the district court regarding the contents of the documents seized from Lin Lyn, from the record we can reasonably be sure that such documents exist. Thus, this is not a case in which essential evidence against the defendant is suppressed and dismissal of the

indictment must naturally follow.  Cf. <u>United States v. Johnson</u>, 463 F.2d 70, 73 (10th Cir. 1972).

By suppressing the evidence acquired as a result of the illegal seizure, the prosecution is unable to benefit from the government's unconstitutional conduct. On the other hand, there is nothing to forbid the government from beginning a new investigation, using the evidence legitimately acquired prior to March 29, 1991, and conducted by personnel – both investigatory and prosecutorial – untouched by the taint of the yellow notepad.  If the government is able to prosecute its case by presenting untainted evidence derived from legally acquired materials, then it should be allowed to do so; defendants have no right to be protected from governmental actions taken in compliance with constitutional requirements.

## CONCLUSION

The district court's decision to suppress all evidence obtained on or after March 29, 1991 is AFFIRMED.  Its decision to dismiss the indictment is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.