FILED
United States Court of Appeals
Tenth Circuit

August 10, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL SCOTT CALHOUN,

Defendant - Appellant.

No. 14-7077

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 6:12-CR-00061-RAW-1)**

Linda A. Epperley, Assistant United States Attorney (Mark F. Green, United States Attorney and Christopher Wilson, Assistant United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.

James G. Wilcoxen, Muskogee, Oklahoma, for Defendant-Appellant.

Before **PHILLIPS**, **BALDOCK**, and **EBEL**, Circuit Judges.

**BALDOCK**, Circuit Judge.

This matter was previously before the Court when Defendant Michael Calhoun (and two co-conspirators) prematurely sought to appeal a district court order denying his motion to quash the indictment. The 60-count indictment, which we are told arose wholly out of Defendant's grand jury testimony, charged Defendant with 50

counts of mail and wire fraud and conspiracy to commit the same. Absent a "final decision," we dismissed the appeal for want of subject matter jurisdiction. United States v. Tucker, 745 F.3d 1054, 1062–70 (10th Cir. 2014). Back in district court, Defendant entered into a plea agreement with the Government. Defendant pled guilty to one count of conspiracy to commit wire or mail fraud in violation of 18 U.S.C. § 1349, and reserved his right to appeal the denial of his motion to quash. The district court sentenced Defendant to five years probation. The court did not impose a fine or order restitution. Defendant again appealed. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

Our decision dismissing Defendant's original appeal set forth the complex historical and procedural facts of this case. Tucker, 745 F.3d at 1057–62. For purposes of the present appeal, both parties have adopted that factual recitation in its entirety as their own. We therefore need not repeat the facts here. Rather, we simply assume the reader's familiarity with the facts as recited in Tucker. This allows us to proceed directly to Defendant's claim that a "division of loyalties," *i.e.*, conflict of interest, on the part of his retained counsel prompted his incriminating grand jury testimony, thus tainting the indictment. Specifically, Defendant asserts his criminal counsel, Tom Mills—hired and paid by Texas Capital Bank on the recommendation of his civil counsel Larry Friedman—encouraged Defendant to incriminate himself before the grand jury for the purpose of assisting the Bank in its

2

efforts to overturn a $65 million civil judgment related to the scheme.[1] See id. at 1058. Defendant says this imbroglio rendered his criminal counsel ineffective in violation of his Sixth Amendment right to counsel, thereby requiring suppression of his grand jury testimony and quashing of the indictment.[2]

Perhaps Defendant portrays his quandary accurately when he tells us the prospect of maintaining any defense was gone after he made his incriminating statements to the grand jury. But that alone does not render his testimony or the resulting indictment constitutionally infirm under the Sixth Amendment's right to counsel clause. To be sure, the Supreme Court has recognized "the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party." Wood v. Georgia, 450 U.S. 261, 268 (1981). One risk of such arrangement, apparent here, is that "the party paying the fees may have had a[n] . . . interest in establishing a legal precedent and could do so only if the interests of the defendant[] . . . were sacrificed." Id. at 270. On the facts presented, the conduct of

---

[1] In our prior opinion, we explained that Defendant and his co-conspirators contended the Bank, acting through a loan officer, was a participant in the fraudulent scheme (obviously a civil jury thought so). Defendant's presentence report, however, characterized the Bank as a victim of the scheme. Id. at 1058.

[2] In United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) we held that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal," absent those "rare instances [where such claims] may need no further development prior to review on direct appeal." In this case, neither party has suggested further development of the record is desirable and we see no need for such development given that Defendant had a meaningful opportunity to press his ineffective assistance claim before the district court in the first instance.

3

Friedman, Mills, and the Bank's attorney Stephen Jones gives rise to *at least* an appearance of impropriety in tension with professional ethical standards.

But a constitutional right to representation free from a conflict of interest arises only where a constitutional right to counsel exists in the first place. See Nix v. Whiteside, 475 U.S. 157, 165 (1986) ("[B]reach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel."). Therein lies the problem for Defendant. "By its very terms, [the Sixth Amendment right to counsel] becomes applicable only when the government's role shifts from investigation to accusation." Moran v. Burbine, 475 U.S. 412, 430 (1986). The Sixth Amendment provides that "[i]n all criminal *prosecutions*, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend. VI (emphasis added). The Supreme Court has long endorsed the view that the Sixth Amendment right to counsel does not attach until the initiation of formal criminal proceedings in a court of law by way of preliminary hearing, indictment, information, or arraignment. Moran, 475 U.S. at 431 ("The clear implication of [Supreme Court] holding[s] . . . is that the Sixth Amendment right to counsel does not attach until after the initiation of formal charges."); United States v. Gouveia, 467 U.S. 180, 188 (1984) ("The view that the right to counsel does not attach until the initiation of adversary judicial proceedings has been confirmed by this Court in [numerous] cases."); United States v. Calandra, 414 U.S. 338, 343 (1974) ("A grand jury proceeding is not an adversary hearing . . . . Rather, it is an

4

*ex parte* investigation . . . ."). "No doubt [viewing] the grand jury proceeding's status as other than a constituent element of a 'criminal prosecution[],'" United States v. Williams, 504 U.S. 36, 49 (1992), we have followed the Supreme Court's lead and held, as applicable to this case, that the Sixth Amendment right to counsel does not attach to grand jury proceedings, or prior to the resulting indictment. United States v. Kingston, 971 F.2d 481, 491 (10th Cir. 1992); see also United States v. Anderson, 906 F.2d 1485, 1493 (10th Cir. 1990).

This is so even if the individual summoned to appear before a grand jury is the subject of the investigation. See Williams, 504 U.S. at 49; United States v. Mandujano, 425 U.S. 564, 581 (1976) (plurality); see also United States v. Hayes, 231 F.3d 663, 674 (9th Cir. 2000) (en banc) ("Being a target is not enough, either."). In re Groban, 352 U.S. 330 (1957), is illustrative. There, the issue was whether complainants had a constitutional right to the assistance of retained counsel in connection with their testimony before a state fire marshal regarding the cause of a fire. The Court analogized the complainants' situation to that of a suspect witness before a grand jury:

> The fact that [complainants] were under a legal duty to speak and that their testimony might provide a basis for criminal charges against them does not mean that they had a constitutional right to the assistance of their counsel. . . . *A witness before a grand jury cannot insist, as a matter of constitutional right, on being represented by his counsel . . . .* There is no more reason to allow the presence of counsel before a Fire Marshal trying in the public interest to determine the cause of a fire. Obviously in these situations evidence obtained may possibly lay a witness open to criminal charges. When such charges are made in a

5

criminal proceeding, he then may demand the presence of his counsel for his defense.

Id. at 332–33 (emphasis added).

Precedent, both our own and that of the Supreme Court, provides us no alternative but to recognize that Defendant's Sixth Amendment right to counsel did not attach until August 15, 2012, the date he was formally charged by way of indictment. Unfortunately for Defendant, his right to counsel claim centers on his counsel's conduct prior to that date. Defendant has no remedy without a right.[3]

For reasons that escape us, the Government has never challenged Defendant's apparent but erroneous assumption that his right to counsel attached upon Mills' retention. See Moran, 475 U.S. at 430 (rejecting the "suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment"). Because Defendant has had no opportunity to defend his assumption, we could, in our discretion, deem any challenge to Defendant's claimed right to counsel waived. But see United States v. Snyder, ___ F.3d ___, ___, 2015 WL 4394324, at *2 (10th Cir., July 20, 2015) (recognizing our authority to affirm a district court's ruling on "any ground adequately supported by the record"). Even if we were to join the Government in ignoring the elephant in the room, however, Defendant would fare no better.

---

[3] We note that in the present appeal Defendant has advanced no theory of relief other than that his criminal counsel's conflict of interest violated his Sixth Amendment right to counsel.

6

Dismissal of an indictment is a "drastic step," and as such, is a "disfavored remedy." Kingston, 971 F.2d at 491. "[E]ven if [a defendant] can show that an important privilege or right . . . was violated during the grand jury stage of a criminal prosecution, the indictment will not be dismissed unless [defendant] can show prejudice. Id. In United States v. Morrison, 449 U.S. 361, 364 (1981), the Supreme Court held a violation of the Sixth Amendment right to counsel did not warrant dismissal of the indictment. "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." Id. at 365. In view of the facts here, we conclude Defendant has not shown that Mills' representation caused an "effect of constitutional dimension" sufficient to warrant quashing the indictment. Id. at 366. Let us explain.

In 2011, Defendant "received a subpoena to appear before a federal grand jury . . . along with a letter informing him that he was a target of the grand jury's investigation." Tucker, 745 F.3d at 1058. When the FBI asked Defendant for his assistance in the investigation, he "responded that he intended to cooperate, but he could not afford counsel because he had exhausted his financial resources in the civil litigation." Id. Following entry of the civil judgment, attorney Friedman, who had served as Defendant's civil counsel, informed him that if he would testify before the grand jury, Friedman would ask the Bank to retain and pay for his criminal counsel. "Friedman explained that if [Defendant] testified to the grand jury that the alleged

7

fraud originated with him and other[s] . . . , that testimony could help overturn the civil judgment against the Bank." Id. Furthermore, "Friedman assured [Defendant] that even if he did get indicted, he would only receive probation." Id. at 1059.

Eventually, the Bank retained attorney Mills to represent Defendant. Defendant testified before the grand jury on February 15, 2012. Our prior opinion describes what took place.

> Before he took the stand, Mr. Mills told [Defendant] he was working on a plea deal with AUSA Roberts, but that Mr. Roberts could not announce the deal until after all the other defendants in the case had been tried and sentenced. Mr. Mills allegedly told [Defendant] that under the terms of this deal, he would receive probation after giving substantial assistance to the grand jury investigation.
>
> During [Defendant's] grand jury testimony, AUSA Roberts asked him if he understood he had a deal with the Government whereby he would plead guilty to a one-count indictment for conspiracy to defraud a financial institution and his sentence would be capped at five years, with a downward departure to less than five years if he provided substantial assistance. [Defendant] said yes but later *testified at the district court's hearing on his motion to quash that he believed the downward departure would get him to probation at worst*.

Id. at 1059 (emphasis added).

Sure, Defendant did not want to be indicted and he understood that Friedman and the Bank did not want him indicted either. But the Government made no such promise. Defendant acknowledged at the hearing on his motion to quash that Mills told him just prior to his grand jury testimony "that after I had given substantial help, then I would be granted probation." Rec. vol 2, at 39. Defendant understood this to mean "a deal had been made and I would get probation at worst." Id. Then, after

the prosecutor advised him that he would receive a downward departure for his assistance, Defendant testified before the grand jury. Defendant may not have received the deal he had hoped for, but he undoubtedly received the deal he expected.

AFFIRMED.