**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 9 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EDWARD CHARLES LOFTIN, JR.,

Plaintiff-Appellant,

v.

TOM DALESSANDRI, Sheriff;
DAN HALL, Under Sheriff;
GARFIELD COUNTY, COLORADO
ELECTED AND APPOINTED
OFFICIALS,

Defendants-Appellees.

No. 00-1091
(D.C. No. 97-WM-1718)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **EBEL** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Edward C. Loftin, a Colorado state prisoner appearing pro se, appeals from the district court's order granting summary judgment to defendants-appellees on his 42 U.S.C. § 1983 complaint. Plaintiff claims that certain prison officials at Garfield County Jail and the Garfield County Board of County Commissioners violated his Eighth Amendment rights against cruel and unusual punishment by exposing him to tuberculosis (TB) by allowing inmates who tested positive for exposure to TB to remain in his cell. Because the court failed to apply the correct legal standards to plaintiff's request for appointment of counsel, we reverse and remand for further proceedings.

## I. Background.

### A. Tuberculosis in Correctional Facilities.

TB is a communicable and potentially deadly disease that generally affects the lungs. It is spread through the air when a person with TB coughs or sneezes. TB exists in both latent and active stages. *See Williams v. Greifinger*, 97 F.3d 699, 701 (2d Cir. 1996). "Persons with latent TB are infected with the bacterium that causes TB, but have no obvious symptoms, and are not ordinarily contagious." *Id*. "Persons with active TB, by contrast, have symptoms (including coughing, sweating, and fever) and are contagious." *Id.* In the early stages, however, "pulmonary TB is asymptomatic, with gradual symptoms of fever, malaise, and weight loss going unnoticed." Kimberly A. Johns, Christos

Varkoutas, *The Tuberculosis Crisis: The Deadly Consequence of Immigration Policies and Welfare Reform*, 15 J. Contemp. Health L. & Pol'y 101, 106 (1998). "Given the somewhat undetectable nature of TB symptoms, early diagnosis of the disease is essential . . . ." *Id*. "Active TB can be detected through sputum samples and chest x-rays." *Williams*, 97 F.3d at 701.

"A prisoner who is known to have latent TB can be given a course of treatment, termed 'INH therapy,' which will greatly reduce the risk that he or she will develop active TB." *Williams*, 97 F.3d at 701. "Generally, however, a latent TB infection cannot be eliminated altogether." *Id*.

Prisons are high risk environments for tuberculosis infection.[1] The Center for Disease Control (CDC) recommends that all inmates be screened for symptoms of TB at the time of entry into the prison facility. Center for Disease Control, 45 Morbidity and Mortality Weekly Report, No. RR-8, *Prevention and Control of Tuberculosis in Correctional Facilities, Recommendations of the Advisory Council for the Elimination of Tuberculosis*,

---

[1] "Environmental conditions such as the volume of airspace, the presence of sunlight, and the adequacy of outside ventilation, also influence the probability of tuberculosis transmission[;]" thus, persons confined in correctional facilities are at high risk because of "overcrowding," poor "prison ventilation systems," and "[i]nadequate artificial lighting and insufficient exposure to sunlight in prisons." Lawrence O. Gostin, *The Resurgent Tuberculosis Epidemic in the Era of AIDS: Reflections on Public Health, Law, and Society*, 54 Md. L. Rev. 1, 21-22, 52 (1995).

http://www.cdc.gov/mmwr/PDR/RR/RR4508.pdf (June 7, 1996), at 9, 11. According to the CDC, "[a]ll persons who have a positive skin-test result or symptoms suggestive of TB should receive a thorough medical evaluation, and a chest radiograph should be taken and evaluated." *Id*. at 15. "Persons who have tested positive on a TB skin-test and no symptoms suggestive of TB should be screened with a chest radiograph within 72 hours after the skin test is interpreted." *Id*. at 8. The CDC further recommends that:

> Persons who have *suspected* or confirmed . . . TB disease should be placed immediately in a TB isolation room that meets recommended standards. Moving a patient to another facility or hospital that has an available TB isolation room may be necessary. TB isolation procedures can be discontinued if a diagnosis of TB is excluded. If a diagnosis of TB cannot be excluded, *the patient should remain in isolation until the patient is determined to be noninfectious*.

*Id.* at 17 (emphasis added).

According to the CDC, persons who live with or are otherwise frequently in close physical proximity to a person suspected of being contagious, such as cellmates, are at the highest risk of being infected. *Id*. at 16. Thus, when a person is suspected to be infectious, the CDC recommends that prison officials do a prompt and thorough investigation of his or her cellmates and others who have had close contact with that person in order to control the spread of TB. *Id*.

-4-

B. Plaintiff's Complaint.

Plaintiff was incarcerated at the Garfield County Jail as a post-trial criminal defendant for two weeks in July 1996. There, he was confined in a cell with three other cellmates. Plaintiff alleges the cellmates all ate, slept, showered and used the toilet inside the shared cell. He further alleges that he tested negative for exposure to TB shortly before his confinement at Garfield County Jail. A nurse at the Garfield County Jail performed a TB skin test on two of plaintiff's cellmates. It is undisputed that these prisoners tested positive for TB. Plaintiff claims these cellmates were illegal aliens who had been incarcerated at the jail for seventy days before they were tested for TB. [2]

It is undisputed that prison officials did not isolate the cellmates who tested positive, nor did they perform additional medical tests to determine whether or not these inmates were infectious. After his cellmates tested positive for TB, plaintiff immediately asked jail officials to move him to another cell. Plaintiff claims the undersheriff of the jail denied his request, even though empty cells were available, because all of the cellmates were scheduled to be transferred to the state department of corrections, and jail policy was to keep such inmates

_____

[2] "[A] significant number of TB cases are 'imported' into the U.S. by immigrants, either documented or undocumented . . . [who] are predisposed to suffer . . . infectious diseases like TB . . . ." Kimberly A. Johns, Christos Varkoutas, *The Tuberculosis Crisis: The Deadly Consequence of Immigration Policies and Welfare Reform*, 15 J. Contemp. Health L. & Pol'y 101, 114 (1998).

together. It is undisputed that Garfield County Jail officials did not test plaintiff for exposure to TB while he was incarcerated there.

Defendants presented evidence that Garfield's prison policy is to isolate inmates from the general population only if the inmate has both a positive skin test result and symptoms of active TB. R. Doc. 30, Ex. 2, at 2. If an inmate has a positive skin test, but no symptoms of active TB, Garfield County Jail policy is to schedule the inmate for a chest x-ray after receipt of vouchers from the public health nurse and when security can be provided for transport to a hospital. *Id*.

In September 1996, plaintiff tested positive for TB after he was transferred to another correctional facility. He claims he could only have been exposed to TB while he was at Garfield County Jail with the two cellmates who tested positive because he did not share a cell after his transfer. Plaintiff was given the INH therapy, but states he had an adverse reaction to the medication and had to discontinue its use because of headaches and vomiting. Plaintiff also claims to have suffered from neurological problems as a result of his treatment.

### C. Proceedings Below.

Plaintiff filed his pro se complaint in August 1997. The district court granted plaintiff's request to proceed *in forma pauperis*, and referred the case to a magistrate judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1). Plaintiff filed a motion requesting the appointment of counsel, which was denied

-6-

by the magistrate judge.  The defendants then filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Defendants attached two affidavits to their motion, one from defendant Dan Hall, the Garfield County Jail Administrator.  Hall acknowledged  that the cellmates had tested positive for TB, but stated that they did not have symptoms of active TB.  He stated in his affidavit that if any inmate had active TB, he would have been immediately segregated and taken to a hospital.  The other affidavit was from Judy Candow, the Garfield County Jail nurse.  She stated that she monitored the cellmates who tested positive for TB and that they did not show signs of having active TB; thus, she determined they were not contagious.  According to the nurse's affidavit, under jail policy, unless an inmate showed symptoms of active TB, the inmate would not be segregated from the general population nor would chest x-rays of the inmate be ordered.  R. Doc. 30, Ex. 2, at 2.

The magistrate judge converted defendant's motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56 because it included affidavits. *See Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995) (noting that court may convert Rule 12(b)(6) motion to dismiss into a motion for summary judgment to consider matters outside plaintiff's complaint).  The magistrate judge's order informed plaintiff he had approximately six weeks to file a response to the

motion, "along with any supporting affidavits which comply with the requirements of Fed. R. Civ. P. 56(e)." R. Doc. 43.

Plaintiff did file a response entitled "Counter Motion for Summary Judgment." R. Doc. 46. It contained no supporting evidence, however, merely plaintiff's allegations. Plaintiff later filed a motion to amend his complaint to add as defendants certain jail officials in their individual capacities and to add Nurse Candow as a defendant in her individual and official capacity. Plaintiff again requested the magistrate judge to appoint counsel for him because of his lack of legal knowledge, which was denied by the magistrate judge.

Plaintiff then filed another pleading in response to the defendants' motion in which he repeated his claims, but he still did not include any supporting evidence. R. Doc. 113. He did, however, contradict Nurse Candow's statement that she monitored the cellmates who tested positive to see if they had symptoms of active TB: plaintiff alleged in his signed pleading that she only came to the cell once to give the skin test and never returned again. *Id*. at 2.

The magistrate judge recommended that defendants' motion for summary judgment be granted because plaintiff failed to present any evidence to support his claims. In his objections to the report, plaintiff stated that he had been under the impression he was supposed to submit evidence during the discovery stage of the litigation and did not realize that time had come. He stated he understood

from the magistrate judge that counsel could not be appointed, but that he felt disadvantaged because he was not well versed in the law and had very limited access to the prison law library. The district court adopted the recommendation of the magistrate judge and dismissed the complaint.

## II. Analysis.

### A. The Eighth Amendment.

Prison officials and municipalities cannot "absolutely guarantee the safety of their prisoners," but "[t]hey are, however, responsible for taking reasonable measures to insure the safety of inmates." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). To prove a breach of this duty rising to the level of an Eighth Amendment violation, a prisoner must show both that he is "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and that the prison official acted with deliberate indifference, which means that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," *id*. at 837.

The Supreme Court has recognized that exposure to contagious diseases may violate the Eighth Amendment if prison officials, acting with deliberate indifference, expose a prisoner to a sufficiently substantial "risk of serious

damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that exposure to environmental tobacco smoke states an Eighth Amendment cause of action even though inmate is asymptomatic because the health risk posed by involuntary exposure to second hand smoke was "sufficiently imminent"). In *Helling*, the Supreme Court observed that the Eighth Amendment requires a remedy for placement of inmates in punitive isolation under conditions where infectious diseases could spread easily. *Id.* at 33 (citing *Hutto v. Finney*, 437 U.S. 678, 682 (1978)). The Supreme Court also noted its approval of *Gates v. Collier*, 501 F.2d 1291, 1300 (5th Cir. 1974), which held that inmates were entitled to relief under the Eighth Amendment where they proved threats to personal safety from the mingling of inmates with serious contagious diseases. *Helling*, 509 U.S. at 33. *See also DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990) (holding that continuing failure by prison officials to institute system to prevent the spread of tuberculosis violated the Eighth Amendment). Thus, plaintiff's claims have an arguable basis under the Eighth Amendment.

## B. Appointment of Counsel.

Plaintiff claims on appeal that he was waiting for the discovery stage of the trial to begin, and had witnesses who would have testified Nurse Candow did not monitor his cellmates to see if they had symptoms of active TB. He claims the magistrate judge did not let the case proceed to the discovery stage. The thrust of

his argument is that he did not have the legal expertise to handle this case or access to legal resources, and that he could not afford an attorney. He contends that the magistrate judge should have dismissed his case without prejudice so that he could prosecute his case once he got out of jail, began working and could afford to hire an attorney. Liberally construing plaintiff's pro se brief under *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), we conclude he is challenging the magistrate judge's denial of his request for the appointment of counsel.

The magistrate judge recognized that plaintiff's case had sufficient merit to withstand a 28 U.S.C. § 1915 dismissal, and recognized that plaintiff was indigent. The magistrate judge failed, however, to apply the correct legal standards to plaintiff's request for appointment of counsel under 28 U.S.C. § 1915(e). When plaintiff requested the magistrate judge to appoint counsel, he stated that the issues were complex, he had very little access to the prison law library, and he had a very limited knowledge of the law. The magistrate judge denied the motion, stating:

> The court notes that counsel cannot be appointed and paid on this type of case. 28 U.S.C. § 1915(e). Further, the Court does not have the power to appoint an attorney over his or her objection. *See Mallard v. United States District Court for the Southern Dist. of Iowa*, 490 U.S. 296 (1989).

R. Doc. 22

Contrary to the magistrate judge's statement, under § 1915(e), the district court "may request an attorney to represent any person unable to afford counsel." *Mallard* is not dispositive of the issue in this case. While it is true that § 1915(e) does not authorize the district court to require an unwilling attorney to represent an indigent defendant in a civil case, *Mallard*, 490 U.S. at 305, it does allow the court to make an appropriate request that legal assistance be provided, *id*. at 308. Nothing in the record indicates that the magistrate judge made such a request on plaintiff's behalf.

Ordinarily, a decision whether or not to appoint counsel in a civil action will be reviewed only for an abuse of discretion. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). "Such a review, however, presupposes the application of a reasoned and well-informed judgment, guided by sound legal principles." *Castner v. Colorado Springs Cablevision*, 979 F.2d 1417, 1423 (10th Cir. 1992). We have "stressed the necessity for the district court to give careful consideration to all the circumstances with particular emphasis upon certain factors that are highly relevant to a request for counsel." *Rucks*, 57 F.3d at 979 (quotation omitted). In deciding whether to appoint counsel, "the district court should consider a variety of factors, including the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims."

*Long v. Shillinger*, 927 F.2d 525, 527 (10th Cir. 1991); *see also Rucks*, 57 F.3d at 979 ("[I]f the plaintiff has a colorable claim then the district court should consider the nature of the factual issues and the ability of the plaintiff to investigate the crucial facts." (quotation omitted)).

The magistrate judge did not discuss any of these factors. Nor does the record reveal that the magistrate judge gave "careful consideration" to plaintiff's request, *see id.,* or made a good faith effort to find an attorney to represent him. The magistrate judge's failure to apply the correct legal standards to plaintiff's request for appointment of counsel constituted an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."); *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1116-17 (10th Cir. 1998) (holding that abuse of discretion is established if the district court's decision is based upon an error of law).

Accordingly, we remand for the district court to consider the relevant factors and address plaintiff's request for appointment of counsel. The presence of factual issues in this case may well justify providing counsel to develop the necessary factual record. We leave that decision to the district court's consideration.

-13-

REVERSED and REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Mary Beck Briscoe
Circuit Judge