**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

JASON WILLIAM JONES,

Defendant - Appellee.

No. 01-1327

(D.C. No. 01-CR-58-D)

(D. Colorado)

**ORDER AND JUDGMENT***

Before **SEYMOUR**, **BALDOCK**, and **BRISCOE,** Circuit Judges.

The government appeals the district court's suppression of defendant Jason Jones'

station-house confession.  We exercise jurisdiction under 18 U.S.C. § 3731 and reverse

and remand.

Jones was arrested in an Atlanta hotel room pursuant to a federal arrest warrant for

participating in a robbery of the Colorado State Bank and Trust in Denver, Colorado.  FBI

Agent Mangrum and five other agents lined up outside the door to the motel room,

---

*This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

knocked and announced who they were, and immediately tried to gain access to the room. The agents' attempt to use a keycard failed because the door was latched from the inside. The agents gained entry by using a battering ram. The agents handcuffed Jones and placed him under arrest.

FBI Agent Fitzgerald transported Jones to an Atlanta detention facility. During the fifteen-minute car ride, Agent Fitzgerald engaged in general conversation with Jones. There was no one else in the car. At the evidentiary hearing on Jones' motion to suppress, Agent Fitzgerald testified that he did not give Jones a <u>Miranda</u> warning and that he did not question Jones. Agent Fitzgerald testified he did explain how the federal criminal justice system differed from the state system. He told Jones that in the federal system, a sentence is based on a point system with no chance of parole and that "the only thing that subtracts from his points is what the government calls acceptance of responsibility." Appellant's App. 3 at 545. After arriving at the detention facility, Jones was interviewed by two FBI agents, including Agent Mangrum. Jones was advised of his constitutional rights under <u>Miranda</u>, stated that he understood his rights, and signed a written waiver of those rights. Shortly thereafter, Jones admitted his role in the bank robbery and implicated his two codefendants.

Jones was indicted for armed bank robbery, 18 U.S.C. § 2113(d), and use of a firearm during commission of a crime of violence, 18 U.S.C. § 924(c). He moved to suppress his post-arrest confession on the grounds that the FBI agents executed the arrest

2

warrant without complying with the "knock and announce" requirement of 18 U.S.C. § 3109.  The district court agreed and granted the motion to suppress.  The court found there were no exigent circumstances presented which would allow the agents to circumvent the "knock and announce" requirement.  The court also found the station-house confession was "inextricably connected" to the illegal arrest.

The government concedes that the agents did not comply with § 3109 when they executed the arrest warrant.  Section 3109 provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109.  "The statute requires law enforcement officials to announce their authority and purpose, and to be denied admittance, before they break down the door of a house."  United States v. Remigio, 767 F.2d 730, 732 (10th Cir. 1985).

The government argues that, even though the agents failed to comply with § 3109, the suppression of Jones' station-house confession was erroneous under New York v. Harris, 495 U.S. 14 (1990).  We review a district court's ruling on a motion to suppress based on live testimony for clear error unless the ruling was influenced by an incorrect view of the law.  See United States v. Lin Lynn Trading, Ltd., 149 F.3d 1112, 1116 (10th Cir. 1998).  Questions of law are reviewed de novo.  See id.

The district court based its ruling on Brown v. Illinois, 422 U.S. 590 (1975).  The

3

court found that the factors set forth in <u>Brown</u> (temporal proximity of the official violation, consent, intervening circumstances, and flagrancy of the official misconduct) weighed in favor of suppressing the confession. Specifically, the court noted the temporal proximity of the 12:40 a.m. illegal arrest and the 1:44 a.m. confession without any "intervening circumstances," and the court's view that Agent Fitzgerald's talk with Jones was an effort to "loosen" up Jones. Appellant's App. 4 at 727.

As the government correctly argues, this case is controlled by the decision in <u>Harris</u>. In <u>Harris</u>, police officers entered the defendant's residence and arrested him without a warrant. Although the warrantless arrest was illegal, the Court did not suppress defendant's station-house confession. Instead, the Court held that while its ruling in <u>Payton v. New York</u>, 445 U.S. 573 (1980), rested upon the Fourth Amendment protections applicable to a residence, the exclusionary rule did not apply to protect statements made outside the residence if the police had probable cause to arrest the suspect for committing the crime. <u>See</u> 495 U.S. at 17-18. Likewise, although § 3109 protects the sanctity of a person's residence (or, as in this case, a hotel room), Jones' later station-house confession was the product of his arrest, one that was made with probable cause (and a federal arrest warrant).

Although the Supreme Court accepted the fact that the arrest of defendant in <u>Harris</u> was in violation of his Fourth Amendment rights, it noted:

> Nothing in the reasoning of [<u>Payton</u>] suggests that an arrest in a
> home without a warrant but with probable cause somehow renders unlawful

continued custody of the suspect once he is removed from the house. There could be no valid claim here that Harris was immune from prosecution because his person was the fruit of an illegal arrest. Nor is there any claim that the warrantless arrest required the police to release Harris or that Harris could not be immediately rearrested if momentarily released. Because the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given Miranda warnings, and allowed to talk. For Fourth Amendment purposes, the legal issue is the same as it would be had the police arrested Harris on his doorstep, illegally entered his home to search for evidence, and later interrogated Harris at the station house. Similarly, if the police had made a warrantless entry into Harris' home, not found him there, but arrested him on the street when he returned, a later statement made by him after proper warnings would no doubt be admissible.

495 U.S. at 18 (internal citation omitted). If we replaced the word "warrantless" with the phrase "no-knock entry" in this quoted paragraph, the factual scenario would mirror the facts of the present case.

The district court in the present case erred when it relied on Brown to suppress Jones' statement. The Court in Harris explained why Brown would not apply in a factual setting similar to that presented here:

In [Brown], evidence obtained from a criminal defendant following arrest was suppressed because the police lacked probable cause. [Brown] stand[s] for the familiar proposition that the indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality. We have emphasized, however, that attenuation analysis is only appropriate where, as a threshold matter, courts determine that the challenged evidence is in some sense the product of illegal governmental activity. . . . [I]n cases such as [Brown] and its progeny, an affirmative answer to that preliminary question may be assumed, since the "illegality" is the absence of probable cause and the wrong consists of the [police] having control of the defendant's person at the time he made the challenged statement. In these cases, the "challenged evidence" – i.e., the post arrest confession – is unquestionably "the product of [the] illegal

5

governmental activity" – i.e., the wrongful detention.

Id. at 18-19 (internal citations omitted).

Jones' detention was not wrongful or illegal. Indeed, he was arrested pursuant to a federal arrest warrant and the probable cause for his arrest is not challenged. Jones' confession was the result of his lawful detention and possibly the discussion he had with Agent Fitzgerald on the way to the detention facility. However, Jones would have been arrested and transported to the detention facility by Agent Fitzgerald even if the FBI agents had complied with § 3109 in carrying out the arrest. Therefore, under Harris, the confession should not be suppressed. Whether Jones' statement was voluntary and ultimately admissible are issues the district court has not yet had the opportunity to address and we do not address them at this juncture.

We REVERSE the district court's suppression of Jones' statement and REMAND this case for further proceedings.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

6