**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bob W. STOREY, a/k/a Robert W. Storey, and Robert T. Stephan, Defendants–Appellants.**

**Nos. 92–3236, 92–3247.**

United States Court of Appeals, Tenth Circuit.

Aug. 13, 1993.

---

Linda L. Sybrant (Lee Thompson, U.S. Atty., with her on the brief), Sp. Asst. U.S. Atty., Kansas City, MO, for plaintiff-appellee.

James R. Wyrsch (Mark L. Bennett, Jr. and Ann L. Hoover of Bennett & Dillon, Floyd E. Gehrt of Gehrt & Roberts, Topeka, KS, with him on the briefs), of Wyrsch, At-well, Mirakian, Lee & Hobbs, Kansas City, MO, for defendant-appellant Storey.

James R. Wyrsch (Jacqueline A. Cook, with him on the briefs), of Wyrsch, Atwell, Mirakian, Lee & Hobbs, P.C., Kansas City, MO, for defendant-appellant Stephan.

Before BALDOCK, MCWILLIAMS, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

The issue in this case is whether a district court order denying a motion to dismiss an indictment claiming prosecutorial misconduct is immediately appealable.

## BACKGROUND

Appellants Robert T. Stephan and Bob W. Storey were indicted by a federal grand jury sitting in the District of Kansas for committing perjury and conspiring to commit perjury. The charges arose from testimony in the federal civil case *Marcia Tomson v. Robert T. Stephan and Bob W. Storey,* No. 85–4485–S. The essence of the perjury charge was that Appellants had falsely denied knowledge of a nondisclosure clause in a settlement agreement between Appellants and a Ms. Marcia Tomson.

Appellants filed a motion to dismiss the indictment claiming prosecutorial misconduct during the grand jury proceedings. Appellants based their claim on two allegations of prosecutorial misconduct: (1) violation of Fed.R.Crim.P. 6(e)(2); and (2) inflammatory, prejudicial, and improper statements by the prosecutor in front of the grand jury.[1] Appellants contend the appropriate sanction for the alleged violations is dismissal of the indictment.

The first claim is that the Government violated Rule 6(e)(2) which prohibits public disclosure by Government attorneys of "matters occurring before the grand jury." Appellants substantiate their claim by reference to a series of articles in Kansas newspapers which disclose elements of the grand jury

---

1. Appellants also claimed the prosecutor's alleged misconduct had a cumulative effect on the grand jury and the prosecutor's failure to present exculpatory evidence was also misconduct. Although Appellants acknowledge that a prosecutor has no obligation to present exculpatory evidence, they contend the failure to do so is still relevant and adds to the cumulative abuses of the prosecutor. The notion of cumulative misconduct is considered in this opinion.

proceedings. These articles link Government attorneys to the alleged disclosures. For example, an article entitled *Grand Jury Hears 3 Phelpses on Stephans Suit Settlement,* Topeka Capital J., Dec. 5, 1990, referred to United States Attorney Jean Paul Bradshaw as acknowledging that his office had been asked to handle the case. Similarly, an article entitled *Grand Jury Adjourns in Stephan Complaint,* The Wichita Eagle, Jan. 18, 1991, stated that the grand jury was investigating Kansas Attorney General Bob Stephan for possible perjury, that the grand jury had heard testimony from Bob Storey, and that United States Attorney Bradshaw confirmed that his office had been asked to handle the case because it "often [had] dealings with Stephan." Another article, entitled *Stephan Inquiry Widened,* The Wichita Eagle, Aug. 8, 1991, stated that the investigation was widened to consider possible conflicts of interest and said in addition that "most of the work on the perjury case was completed." And yet another article, entitled *Stephan Grand Jury hears from Stingley,* Topeka Capital J., Mar. 1, 1991, stated that Assistant United States Attorney Larsen "indicated the investigation isn't complete." Lastly, an article entitled *Stephan Inquiry Back on Track,* Kansas City Star, Aug. 7, 1991, stated that "[United States Attorney] Bradshaw said he had heard a rumor that Stephan would resign before being indicted. Asked if that meant Bradshaw expected Stephan to be indicted, the prosecutor said he did not mean to suggest that." Appellants contend the foregoing are evidence of significant disclosures by Government attorneys of matters occurring before the grand jury. The district court considered the disclosures at "face value," apparently finding that disclosures had occurred.

Appellants' second contention is that the Government sought to inflame and improperly influence the grand jury. *See generally, United States v. Hogan,* 712 F.2d 757, 759 (2d Cir.1983) (discussing limits on the prosecutor's conduct before the grand jury including "not mak[ing] statements or argu[ing] in a manner calculated to inflame the grand jury unfairly against an accused"). The alleged misconduct occurred during examination of witnesses. For example, during the testimony of Bradley James Smoot, Assistant United States Attorney Robert E. Larsen engaged Mr. Smoot in the following exchange:

> Question: So that it's clear, the—your additional exhibits here and your presentation to the members of the grand jury at the conclusion of your questioning, was solely and exclusively your idea, the Attorney General hadn't asked you to do that?
>
> Answer: No
>
> Question: That's based on your long friendship?
>
> Answer: And my knowledge of the players.
>
> Question: And your knowledge of the players. OK. The reason for that question is, if it had been generated by him, I was curious about why he didn't come here and do it himself. Do you know why?
>
> Answer: No.
>
> Question: Why doesn't he want to come?
>
> Answer: I don't know that he didn't.

Appellants believe that it was prosecutorial misconduct to ask questions before the grand jury about one of the Appellants' failure to testify as such questions were likely to mislead the grand jury and prejudice the Appellants.

Likewise, during the grand jury testimony of Carl A. Gallagher, an Assistant Attorney General for the State of Kansas, the federal prosecutor had a discussion with the witness regarding whether or not the failure of a lawyer to disclose to a client the terms of a settlement was incompetence. During the exchange, the prosecutor indicated that it was "patently absurd" to believe that Bob Stephan didn't know the terms of the agreement. Appellants allege that the prosecutor improperly offered his opinion and that his hyperbole improperly inflamed the grand jury.

Similarly, during the grand jury testimony of Appellant Bob Storey, Assistant United States Attorney Larsen stated: "Now, how in God's name can you say that at the press conference on October 29, 1985, you didn't know that there was an agreement precluding disclosure in this case involving Tom-

son?" Appellants claim the federal prosecutor's questioning was argumentative and improperly influenced the grand jury.

Appellants also made numerous additional claims of alleged misconduct relating to questioning. The claims included (1) use of the question form "[a]re you telling me"; (2) the offering of opinions as to significance of evidence, such as "my impression of what I have read is that the references ... are to a confidentiality agreement between the parties"; and (3) the use of disparaging language and personal attacks, such as the phrases "troubled by," and "was orchestrated," and "I have never heard anything like that from a lawyer." As to all these matters Appellants believe the government "mislead the grand jury and created grave doubts as to the fundamental fairness of the grand jury."

The district court denied the motion to dismiss and this appeal followed. Appellants' position is that prosecutorial misconduct infringing on the fairness of a grand jury implicates a fundamental right not to be tried, and that such cumulative prosecutorial misconduct occurred in this case. Appellants clarify that their "allegations of Rule 6(e) violations are only a portion of their claims of prosecutorial misconduct ... [and] that the [additional] allegations of cumulative prosecutorial misconduct ... rise to a constitutional level, requiring review."

## DISCUSSION

The federal courts of appeals have jurisdiction to review "all final decisions of the district courts," both civil and criminal. 28 U.S.C. § 1291 (1982). A "final judgment" is one that " 'ends the litigation on the merits.' " *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988) (citation omitted). An exception to the final judgment rule permits appellate review of district court orders as final judgments even though the orders do not end the litigation on the merits. The collateral order doctrine permits review of orders that: "(1) 'conclusively determine [a] disputed question,' (2) 'resolve an important issue completely separate from the merits of the action,' and (3) '[are] effectively unreviewable

on appeal from a final judgment.' " *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989), (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)).

■ This court is without jurisdiction to hear Appellants' appeal from the denial of their Rule 6(e)(2) claim because of *Midland Asphalt*, 489 U.S. at 798–99, 109 S.Ct. at 1497–98, which held in clear terms that an order denying a motion to dismiss for an alleged violation of Rule 6(e)(2) is not immediately appealable. The *Midland Asphalt* analysis is fully applicable to this case. The denial of the Rule 6(e)(2) claim did not end the litigation on the merits. Likewise, the district court's decision on the Rule 6(e)(2) claim is not within the collateral order doctrine. Because the alleged violations may be raised on appeal from a final judgment or, in the alternative, are enmeshed with the merits of the litigation, *Midland Asphalt*, 489 U.S. at 799–800, 109 S.Ct. at 1498, the collateral order doctrine is not applicable. If the alleged Rule 6(e)(2) violation may be the basis for reversal from final judgment, then the order is not " 'effectively unreviewable on appeal from a final judgment.' " *Id.* at 800, 109 S.Ct. at 1498 (quoting *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2458). On the other hand, if the alleged violation may not be a basis for reversal from final judgment, this is so because the purpose of the violated Rule is to protect the defendant from answering charges that are not substantiated by probable cause, and this danger is not present if a guilty verdict is returned. *Midland Asphalt*, 489 U.S. at 800, 109 S.Ct. at 1498. Therefore, it cannot be said that the alleged violation is independent of the litigation on the merits. *Id.* As one of the last two requirements is not satisfied, the order is not appealable under the collateral order doctrine.

■ The foregoing analysis applies as well to Appellants' additional claims of prosecutorial misconduct. *United States v. Moreno–Green*, 881 F.2d 680, 683 (9th Cir.1989). Appellants' allegations either implicate a broad right to fundamental fairness during criminal

proceedings, *United States v. Taylor*, 798 F.2d 1337, 1340 (10th Cir.1986), in which case the issues raised may be grounds for relief upon appeal from final judgment and are not immediately appealable, *id.*, or the alleged violations are merely technical violations of the grand jury process, *id.*, and for that reason implicate only a concern that Appellants will be required to answer for charges lacking probable cause, in which case the issue is not independent of the merits and not immediately appealable, *Midland Asphalt*, 489 U.S. at 800, 109 S.Ct. at 1498; *see also United States v. Mechanik*, 475 U.S. 66, 70, 106 S.Ct. 938, 941, 89 L.Ed.2d 50 (1986).

Appellants attempt to avoid the foregoing, well established application of the collateral order doctrine by contending the order is effectively unreviewable once a trial has been held because the right to have an indictment returned free of prosecutorial misconduct implicates a right to not be tried.

■ The facts do not sustain this argument. The petitioners in *Midland Asphalt* raised the same issue and the Supreme Court rejected it by stating: "There is a 'crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges,' ... [and] [n]either Rule 6(e) nor the Constitution affords such a guarantee in the event of a violation of grand jury secrecy." *Midland Asphalt*, 489 U.S. at 801, 109 S.Ct. at 1499 (citations omitted). This analysis applies equally to claims of improper influence, inflammatory behavior, and cumulative misconduct. Although the Grand Jury Clause of the Fifth Amendment confers a right not to be tried when there is no grand jury indictment,[2] not every violation of "protections traditionally associated with the grand jury" process necessarily gives rise to a right not to be tried. *Id.* at 802, 109 S.Ct. at 1499 "Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." *Id.* Appellants parrot the proper language from *Midland Asphalt* and argue cumulative error in this

case rendered the grand jury not a grand jury and the indictment not an indictment, but the record does not substantiate the argument. The alleged Rule 6(e)(2) violations do not raise a right not to be tried, and we disagree with Appellants that the other alleged misconduct either made the grand jury not a grand jury, or the indictment not an indictment. The district court expressed dissatisfaction with the conduct of the Government, but evinced no concern with the conduct, independence, or product of the grand jury. The district court concluded that despite the alleged violations, it would be improper to dismiss "the product of [this] particular grand jury." The record is clear that the grand jury returned a valid indictment from the standpoint that the exercise of the grand jury's function was not fundamentally usurped by the alleged misconduct of the Government. On this basis, we are without jurisdiction as the district court's order was not a final judgment.

Under *Taylor*, Appellants may have stated a viable theory for post-conviction relief. We need not decide this issue as it is immaterial to whether or not the district court's order is presently appealable. We note, however, that not every time a potential claim is stated under *Taylor* is the right not to be tried under the Fifth Amendment implicated. Of course certain district court orders are immediately appealable because the subject of the orders pertain to a right not to stand trial, which will be lost if the trial is held. *Cf. United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978). This category of cases, however, is extremely narrow and must find its definition in an explicit statutory or constitutional guarantee. *Midland Asphalt*, 489 U.S. at 801, 109 S.Ct. at 1499 (Double Jeopardy Clause— "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb;" Speech and Debate Clause—"for any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place"). No such guarantee is involved in this appeal.

---

**2.** The Fifth Amendment reads in pertinent part as follows: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

Appellants cite *United States v. Deffenbaugh Indus. Inc.*, 957 F.2d 749 (10th Cir. 1992). This citation is unavailing. The issue in *Deffenbaugh* was whether the Government's refusal to disclose the vote in a grand jury proceeding, and the district court's refusal to grant a motion to dismiss on that basis, was an appealable order. In considering whether the order was immediately appealable under the collateral order doctrine, the court held: "The first and second elements of the [*Coopers & Lybrand*] test clearly are met. The court's order fully determined the access question, and whether there were adequate grand jury votes to support the indictment is a matter completely collateral to the merits of the case." *Id.* at 754. The court then concluded the third element was also met as the indictment would not be an indictment unless supported by an adequate number of grand jury votes and therefore the matter was effectively unreviewable on appeal from a final judgment. *Id.* at 755. The foregoing analysis is not applicable to Appellants' case. *Deffenbaugh* involved a clear instance in which the existence of a valid indictment per se was at issue. In contrast, in this case the grand jury properly convened and issued a valid indictment. No right not to be tried under the Fifth Amendment is involved on these facts.

Appellants also filed an interlocutory appeal from the district court's refusal to hold an evidentiary hearing. The district court's decision was not a final judgment and is not presently appealable. Appellants also seek extraordinary relief in the alternative to their other claims. This request is denied. *See Taylor*, 798 F.2d at 1340–41.

We DISMISS the appeal as the district court's order was not a final judgment and we are therefore without jurisdiction.