**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 11, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

WILLIAM JEFFREY TUCKER,
TOMMY WAYNE DAVIS, MICHAEL
SCOTT CALHOUN,

      Defendants - Appellants.

Nos. 13-7047, 13-7048, 13-7049

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NOS. 6:12-CR-00061-RAW-3, 6:12-CR-00061-RAW-2**
**& 6:12-CR-00061-RAW-1)**

---

J. Lance Hopkins, Tahlequah, Oklahoma, for Appellant William Jeffrey Tucker.

Art Fleak, Tulsa, Oklahoma, for Appellant Tommy Wayne Davis.

James G. Wilcoxen, Muskogee, Oklahoma, for Appellant Michael Scott Calhoun.

Thomas M. Wright, Assistant United States Attorney (Mark F. Green, United States
Attorney, and Linda A. Epperley, Assistant United States Attorney, with him on the
brief), Office of the United States Attorney of the Eastern District of Oklahoma,
Muskogee, Oklahoma, for Appellee.

---

Before **TYMKOVICH, HOLLOWAY,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

A grand jury indicted Michael Scott Calhoun, Tommy Wayne Davis, and William Jeffrey Tucker (collectively, the "Defendants") on 60 counts of wire fraud, mail fraud, and conspiracy to commit wire and mail fraud. The indictment was based on Mr. Calhoun's grand jury testimony in which he incriminated himself, Mr. Davis, and Mr. Tucker. Mr. Calhoun testified upon the advice of his counsel at the time, Tom Mills, who was paid by Texas Capital Bank, the alleged victim of the fraud.

After Mr. Calhoun secured new counsel, the Defendants moved to quash the indictment and suppress Mr. Calhoun's grand jury testimony, contending the indictment was obtained in violation of the Fifth Amendment Indictment Clause, Mr. Calhoun's Fifth Amendment privilege against self-incrimination, and Mr. Calhoun's Sixth Amendment right to effective assistance of counsel. The district court denied the Defendants' motion.

In these consolidated, pretrial interlocutory appeals, the Defendants challenge the district court's denial of their motion to quash. The Defendants urge us to exercise jurisdiction under the "collateral order" exception to the final judgment rule, first articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546-47 (1949).

We conclude the collateral order doctrine does not apply and dismiss these appeals for lack of jurisdiction under 28 U.S.C. § 1291.

# I. BACKGROUND

## A. *Factual Background*

The factual background of this case is complex, involving an elaborate alleged fraud scheme. Because the interlocutory appeals narrowly focus on the validity of the indictment, we briefly review the factual history and then concentrate on events after Mr. Calhoun was subpoenaed to appear before a grand jury.

### 1. The Tri-County Fraud Scheme

At the time of the conduct charged in the indictment, Mr. Calhoun was the general manager of Tri-County Autoplex ("Tri-County"), an automotive dealership in Hugo, Oklahoma. Co-defendant Mr. Davis was employed as Tri-County's sales manager.

In May 2007, Tri-County obtained a line of credit from Texas Capital Bank (the "Bank"), pledging vehicles in its inventory as collateral. Before issuing the line of credit, the Bank required Tri-County to provide documentation proving ownership and possession of these vehicles. As proof of ownership, the Bank accepted Manufacturers Statements of Origin ("MSO's"), which are industry-standard documents listing each vehicle's manufacturing history, make, model, and vehicle identification number ("VIN"). MSO's list the dealership as the owner of the vehicle until it is sold and the dealership issues a title to the purchaser.

According to the indictment, Tri-County leadership entered into a conspiracy with James Dean Kayvonfar and Charles Matthew Spires, employees at Automotive Transfers

Incorporated ("ATI"). [1] ATI is a business that assists dealerships by locating and transferring vehicles from one dealership to another. Mr. Kayvonfar and Mr. Spires would send fraudulent MSO's to Tri-County, which would provide the MSO's to the Bank as proof of ownership for vehicles that were never part of its inventory. The Bank would then extend additional credit to Tri-County.

Tri-County allegedly sought to conceal this fraudulent conduct by telling auditors that some of its fictitious inventory was on loan to another dealership in Hugo called "T or T Auto." Mr. Tucker—the third co-defendant involved in this appeal—owned T or T Auto. The indictment alleges that Mr. Calhoun and Mr. Davis would call Mr. Tucker and list VIN numbers for fictitious cars. When auditors called in reference to those vehicles, Mr. Tucker would recite those VINs, falsely confirming those vehicles were on loan to T or T Auto.

The Defendants contend the Bank participated in the Tri-County fraud scheme. They allege the Bank's loan officer, Clint Kuykendall, "routinely engaged in the practice of creating false and inadequate audits, turning a blind eye to inadequate and suspicious paperwork, accepting dual and fake financial reports, and allowing cars to be sold out of trust." Aplt. Br. at 4-5. The Government refers to the Bank as "the victim in this case" and has not charged Mr. Kuykendall or any other Bank employee. Aplee. Br. at 9.

---

[1] Mr. Kayvonfar and Mr. Spires were charged in the same indictment as the Defendants, but they are not parties to the present appeal.

2. **Underlying Civil Litigation**

In May 2010, Steve Rouse—who in 2007 was a co-owner of Tri-County —

brought a civil action in Oklahoma state court alleging fraud in the financing and

management of the dealership.  The defendants included Mr. Calhoun, Mr. Davis, the

Bank, and Mr. Kuykendall.  Mr. Calhoun retained Texas attorney Larry Friedman to

represent him.

On August 25, 2011, a jury awarded Mr. Rouse $65 million in actual and punitive

damages against all defendants, including the Bank.

3. **Mr. Calhoun's Grand Jury Subpoena[2]**

In 2011, Mr. Calhoun received a subpoena to appear before a federal grand jury in

the Eastern District of Oklahoma, along with a letter informing him that he was a target

of the grand jury's investigation into the Tri-County fraud scheme.

---

[2] The following facts are taken from the magistrate judge's Findings and Recommendation on the Defendants' motion to quash the indictment.  *See* Calhoun ROA, Vol. I at 86.  The magistrate judge's factual determinations were based largely on Mr. Calhoun's testimony at an evidentiary hearing.

The district court adopted the magistrate judge's Findings and Recommendation in full.  *See id.* at 108.  We therefore accept these factual findings unless they are clearly erroneous.  *See United States v. Madden*, 682 F.3d 920, 929 (10th Cir. 2012) (reviewing factual findings relating to a motion to quash an indictment for clear error); *see also Anderson v. City of Bessemer*, 470 U.S. 564, 573-74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").  Because we find no clear error in the magistrate judge's factual determinations, we have adopted them here.

FBI Agent Jeff Youngblood then contacted Mr. Calhoun to ask if he would cooperate with the grand jury investigation. Mr. Calhoun responded that he intended to cooperate, but he could not afford counsel because he had exhausted his financial resources in the civil litigation.

On August 19, 2011, the district court appointed Rex Earl Starr to represent Mr. Calhoun. Mr. Starr contacted Mr. Calhoun to say that he would be on vacation until the end of the month. According to Mr. Calhoun, Mr. Starr took no further action to represent him.

As noted above, the civil judgment against the Bank and Mr. Calhoun (among others) was entered on August 25, 2011. Shortly thereafter, Mr. Calhoun's civil counsel, Mr. Friedman, notified him that he intended to ask the Bank to retain and pay for criminal counsel for Mr. Calhoun. Mr. Friedman explained that if Mr. Calhoun testified to the grand jury that the alleged fraud originated with him and other Tri-County leadership, that testimony could help overturn the civil judgment against the Bank.

Mr. Friedman also prepared an "Affidavit of Non-Prosecution" for the Bank to sign, which said, "It is Texas Capital Bank's desire that Michael S. Calhoun not be prosecuted for any alleged offense arising out of or related to" Tri-County's business with the Bank. Calhoun ROA, Vol. I at 54. Mr. Friedman assured Mr. Calhoun that even if he did get indicted, he would only receive probation. Mr. Calhoun agreed to Mr. Friedman's plan and terminated Mr. Starr's representation. The Bank then selected and retained Robert Wyatt to represent Mr. Calhoun. According to Mr. Calhoun, Mr. Wyatt

-6-

even offered to have the Bank refinance his mortgage to assist with his financial difficulties if he cooperated fully with the Government.

Mr. Wyatt represented Mr. Calhoun for two months in the fall of 2011. He spoke with the Assistant United States Attorney on the case, Ryan Roberts, and negotiated a plea deal under which Mr. Calhoun would plea to a one count indictment with his sentence capped at 60 months. Mr. Calhoun told Mr. Wyatt the deal was not good enough and refused to appear at meetings Mr. Wyatt set up with the FBI. Mr. Friedman advised Mr. Calhoun to terminate Mr. Wyatt's representation, which he did.

Mr. Friedman then contacted the Bank to procure counsel for Mr. Calhoun again. The Bank hired Tom Mills in late December 2011 or early January 2012. As with Mr. Wyatt, the Bank paid for Mr. Mills's representation.

Mr. Mills met with Mr. Calhoun in Mr. Friedman's office in Texas. At this meeting, Mr. Friedman told Mr. Mills that he believed Mr. Calhoun should not be prosecuted or alternatively should receive probation only. Mr. Mills told Mr. Friedman this "should not be a problem." Calhoun ROA, Vol. I at 91.

Mr. Mills, Mr. Friedman, and Mr. Calhoun together met with the Bank's attorneys, who agreed to contact the United States Attorney's Office and tell them that the Bank did not want Mr. Calhoun prosecuted.

Mr. Mills set up a meeting with Agent Youngblood in Oklahoma in January or February 2012. Mr. Mills told Agent Youngblood that the Bank did not want Mr.

Calhoun prosecuted. Mr. Calhoun later testified that he believed, based on this exchange, that he would not be indicted.

On January 19, 2012, Mr. Calhoun gave Agent Youngblood a complete statement describing Tri-County's dealings with the Bank, thereby incriminating himself.

On February 15, 2012, Mr. Calhoun testified before the grand jury. Before he took the stand, Mr. Mills told Mr. Calhoun he was working on a plea deal with AUSA Roberts, but that Mr. Roberts could not announce the deal until all the other defendants in the case had been tried and sentenced. Mr. Mills allegedly told Mr. Calhoun that under the terms of this deal, he would receive probation after giving substantial assistance to the grand jury investigation.

During Mr. Calhoun's grand jury testimony, AUSA Roberts asked him if he understood he had a deal with the Government whereby he would plead guilty to a one-count indictment for conspiracy to defraud a financial institution and his sentence would be capped at five years, with a downward departure to less than five years if he provided substantial assistance. Mr. Calhoun said yes, but later testified at the district court's hearing on his motion to quash that he believed the downward departure would get him to probation at worst.

In his grand jury testimony, Mr. Calhoun incriminated himself and his co-defendants, including Mr. Davis and Mr. Tucker. At the district court hearing on his motion to quash, Mr. Calhoun testified his grand jury testimony was fully truthful.

4. **Mr. Mills's Correspondence with the Bank**

Mr. Mills exchanged correspondence with the Bank about Mr. Calhoun's representation, which Mr. Calhoun argues is evidence of Mr. Mills's conflict of interest.

On June 11, 2012, the Bank's civil attorney, Stephen Jones, sent a letter to Mr. Mills. In this letter, Mr. Jones stated that he had informed the Bank of Mr. Mills's latest billing, for which he would receive payment shortly. Mr. Jones also sought to clarify the payment arrangement with the Bank, reminding Mr. Mills the Bank would pay for Mr. Calhoun's "reasonable, ordinary and necessary fees and expenses if he was cooperating with federal and/or state law enforcement agents or prosecutors in their investigation." Calhoun ROA, Vol. I at 93. Mr. Jones stated that the Bank

> will not pay, nor did it agree to pay, for any work performed by [Mr. Calhoun's] criminal defense attorney which represents an effort to prepare for trial on an indictment. In other words, we encourage his cooperation, but the Bank will not pay for a defense for someone who is fighting an indictment where the Bank itself is the victim.

*Id.*

Mr. Jones also complained in the letter that Mr. Calhoun had not yet met with the Bank's attorneys and investigators to be "debriefed" about the civil litigation. *Id.* at 94. He requested an outline of the remaining work to be done in the criminal representation, along with a litigation budget. *Id.*

Mr. Mills responded to Mr. Jones on June 15, 2012. He stated, in pertinent part,

> At no time in the past or present, or anticipated in the future have I ever billed, nor will I, for defending [Mr. Calhoun] against criminal charges. He is cooperating with the federal government, the state

> government and will be debriefed by the bank and will testify for the bank as requested. I do not know where that thought came from, but if it came from me, it was a miscommunication. If [Mr. Calhoun] ever "blows up" and says he wants a trial, I know that I will not be paid for such representation. He has never indicated that he was going to go that course.

*Id.* at 94-95.

## B. *Procedural Background*

A grand jury indicted the Defendants on August 15, 2012, wholly on the basis of Mr. Calhoun's grand jury testimony. The 60-count indictment charged Mr. Calhoun, Mr. Davis, and Mr. Tucker (along with Mr. Kayvonfar and Mr. Spires, the ATI employees who had allegedly forwarded fraudulent MSO's to Tri-County) with the following: Count 1—Conspiracy to Commit Wire Fraud or Mail Fraud, in violation of 18 U.S.C. § 1349; Counts 2-31—Wire Fraud, in violation of 18 U.S.C. § 1343; and Counts 32-60—Mail Fraud, in violation of 18 U.S.C. § 1341.

On November 27, 2012, the Government filed a felony information charging Mr. Calhoun with a single count of conspiracy to commit a criminal offense or defraud the United States in violation of 18 U.S.C. § 371. Mr. Mills encouraged Mr. Calhoun to plead guilty to the one-count information in anticipation of the negotiated plea agreement.

Mr. Mills and Mr. Calhoun prepared to attend a change of plea hearing on November 30, 2012, but on the way to the courthouse, Mr. Calhoun told Mr. Mills that he had changed his mind and refused to plead guilty. Mr. Mills notified the district court, and the plea hearing was cancelled.

On December 10, 2012, Mr. Mills moved to withdraw as Mr. Calhoun's counsel, citing "irreconcilable differences [with Mr. Calhoun] in how to proceed with the case." Calhoun ROA, Vol. I at 38. The district court granted the motion and, on January 14, 2013, appointed James Wilcoxen as Mr. Calhoun's counsel. Mr. Wilcoxen has continued to represent Mr. Calhoun on appeal.

On May 2, 2013, Mr. Calhoun—acting through Mr. Wilcoxen—moved to quash the indictment and to suppress his grand jury testimony. Mr. Calhoun contended that because the Bank paid Mr. Wyatt and Mr. Mills, a conflict of interest tainted their advice to Mr. Calhoun to testify before the grand jury and thus violated Mr. Calhoun's Sixth Amendment right to effective assistance of counsel. *See Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (noting that a defendant can obtain relief under the Sixth Amendment without showing prejudice if he can demonstrate that "an actual conflict of interest *actually affected the adequacy of his representation*" (quotations omitted)). Mr. Calhoun further argued that Mr. Wyatt and Mr. Mills effectively compelled him to deliver his grand jury testimony and that use of this testimony would violate his Fifth Amendment protection against self-incrimination. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) ("The Fifth Amendment prohibits the prosecution's use of a defendant's compelled testimony." (citing *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985)).[3]

---

[3] Mr. Calhoun's motion to quash the indictment also argued that the admission of his grand jury testimony violated his due process rights under the Fourteenth Amendment, which prohibits the admission of coerced confessions. *See Ledbetter v.*

Continued . . .

Mr. Tucker and Mr. Davis filed joinder motions and were granted leave to join Mr. Calhoun's motion to quash. Mr. Davis's joinder motion added another argument that the Defendants have also raised on appeal: The indictment violated the Defendants' Fifth Amendment right to be properly indicted before a grand jury.

The matter was referred to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). The magistrate judge recommended the district court deny the Defendants' motion to quash because Mr. Calhoun had not proved an actual conflict of interest in Mr. Wyatt's and Mr. Mills's representation of him. Specifically, the magistrate judge noted that under this circuit's recent decision in *United States v. Flood*, 713 F.3d 1281 (10th Cir. 2013), a third-party fee arrangement does not automatically create a conflict of interest in a criminal case. As we explained in *Flood*,

> An actual conflict of interest exists only if counsel was forced to make choices advancing interests to the detriment of his client. In other words, there must be more than a potential conflict of interest or a mere theoretical

---

Cont.

*Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (noting, in the context of a state prisoner's habeas petition under 28 U.S.C. § 2254, that the Due Process Clause of the Fourteenth Amendment "prohibits the admission of coerced confessions procured by means 'so offensive to a civilized system of justice that they must be condemned'" (quoting *Miller v. Fenton*, 474 U.S. 104, 109 (1985)). The Fourteenth Amendment Due Process Clause is inapplicable in this instance, however, because this federal criminal prosecution does not involve a state actor. *See* U.S. Const. amend. XIV, § 1 ("nor shall any *state* deprive any person of life, liberty, or property, without due process of law" (emphasis added)); *Malloy v. Hogan*, 378 U.S. 1, 8 (1964) ("The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will . . . .").

-12-

division of loyalties. To prevail, the defendant has the burden of showing specific instances to support [his or] her claim of actual conflict of interest.

*Id.* at 1286-87 (quotations and citations omitted). The magistrate judge concluded Mr. Calhoun had failed to meet this burden.

On June 13, 2013, the district court adopted the magistrate judge's Findings and Recommendation in full and dismissed the motion to quash the indictment and suppress Mr. Calhoun's grand jury testimony. The district court agreed the Defendants had not demonstrated an actual conflict of interest as required by *Flood*. The district court added that it was unpersuaded by the Defendants' argument "that Mr. Calhoun's testimony was in a sense compelled." Calhoun ROA, Vol. I at 107. The court noted that the Fifth Amendment privilege is not self-executing, and "[a]n individual who makes self-incriminating statements without claiming the privilege is deemed not to have been 'compelled' but to have spoken voluntarily." *Id.* (quoting *United States v. Ramos*, 685 F.3d 120, 127 (2d Cir. 2012)).

The Defendants urge us to exercise jurisdiction over these interlocutory appeals under the collateral order doctrine and reverse the district court's denial of their motion to quash the indictment and suppress Mr. Calhoun's grand jury testimony. The district court has stayed further proceedings pending the disposition of these appeals.

## II. **DISCUSSION**

Because we hold that we lack jurisdiction, we do not reach the merits of the Defendants' appeals.

A.  *Standard of Review*

Whether we have interlocutory jurisdiction under the collateral order doctrine is a legal question that we determine in the first instance.  *See United States v. P.H.E., Inc.*, 965 F.2d 848, 850 (10th Cir. 1992).

B.  *Legal Framework*

We briefly review the collateral order doctrine and its applications in criminal cases.

1.  *Cohen***'s Collateral Order Doctrine**

The jurisdictional question in this case arises because the Defendants' prosecution is still pending in the district court.  Ordinarily, our appellate jurisdiction is limited to "final decisions of the district courts."  28 U.S.C. § 1291.  For this reason, we generally lack jurisdiction to review appeals by criminal defendants before the district court enters final judgment—meaning an order that "ends the litigation on the merits."  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (quotations omitted); *see United States v. Angilau*, 717 F.3d 781, 785 (10th Cir. 2013).[4]

Limited exceptions to this general principle arise, however, under the so-called "collateral order doctrine," first articulated in *Cohen v. Beneficial Industrial Loan Corp.*,

_____

[4] By contrast, the Government is permitted by statute to bring interlocutory appeals of district court orders (1) dismissing an indictment or information (or any part thereof); (2) suppressing or excluding evidence; or (3) granting the release of a defendant or denying a motion for revocation or modification of an order granting release.  *See* 18 U.S.C. § 3731.

337 U.S. 541, 546 (1949). *See Angilau*, 717 F.3d at 785. *Cohen* recognized a "small class" of district court orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546.

To fall within this small class, a district court order must satisfy three requirements: it must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the case, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *see also Angilau*, 717 F.3d at 785; *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1344-45 (10th Cir. 1992). An order is "effectively unreviewable" under the third factor if it "involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *United States v. Quaintance*, 523 F.3d 1144, 1146 (10th Cir. 2008) (quoting *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 498-98 (1989)).

## 2. **Collateral Orders in the Criminal Context**

Although courts use the collateral order doctrine in a variety of civil litigation—most notably, to permit appeals from denials of qualified immunity in cases brought under 42 U.S.C. § 1983, *see Mitchell v. Forsyth*, 472 U.S. 511, 525-27 (1985)—the Supreme Court has instructed that courts should use the exception to the finality

requirement sparingly in the criminal context, *see United States v. Wampler*, 624 F.3d 1330, 1334 (10th Cir. 2010).

"Because of the compelling interest in prompt trials," the Court has "interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases." *Flanagan v. United States*, 465 U.S. 259, 265 (1984). Indeed, the Supreme Court has applied the collateral order exception in only three categories of criminal cases: appeals from (1) motions to reduce bail; (2) motions to dismiss based on double jeopardy grounds; and (3) motions to assert immunity under the Speech or Debate Clause of the Constitution. *See United States v. Hollywood Motor Car Co., Inc.*, 458 U.S. 263, 265-66 (1982); *see also United States v. Culbertson*, 598 F.3d 40, 46 (2d Cir. 2010).

We have stated often that a criminal defendant invoking the collateral order exception must assert a "right not to be tried," *Quaintance*, 523 F.3d 1146, resting upon "an explicit statutory or constitutional guarantee that trial will not occur," *Midland Asphalt Corp. v. United States*, 489 U.S 794, 801 (1989). *See, e.g.*, *Wampler*, 624 F.3d at 1335-36; *Quaintance*, 523 F.3d at 1146; *United States v. Storey*, 2 F.3d 1037, 1041 (10th Cir. 1993). This requirement is rarely satisfied because there is a "crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges." *Midland Asphalt*, 489 U.S. at 801. Accordingly, very few motions to dismiss an indictment—even if founded on a valid constitutional right—will give rise to interlocutory appellate jurisdiction.

Put another way, a criminal defendant bringing an interlocutory appeal must assert a right that cannot be vindicated on direct appeal or collateral review. *See Lauro Lines*, 490 U.S. at 498-99. The three categories in which the Supreme Court has permitted interlocutory criminal appeals illustrate this principle.

First, a motion to reduce bail is eligible for appellate review before trial because the right at issue—the right to reasonable bail under the Eighth Amendment—must be preserved "before trial," or else it would "lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). The right will be rendered moot after either sentencing or acquittal. A defendant found guilty will no longer have the option of posting bail under the original bail order. *See* 18 U.S.C. § 3143(a) and (b) (establishing separate requirements for release pending sentence and appeal). A defendant found not guilty will have no need for bail. An order fixing bail is separate from the merits of trial, and "unless it can be reviewed before sentence, it can never be reviewed at all." *Stack*, 342 U.S. at 12.

Second, a Double Jeopardy Clause claim would be rendered meaningless if motions to dismiss on double jeopardy grounds were not immediately reviewable. The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be *twice put in jeopardy* of life or limb." U.S. Const. amend. V (emphasis added). By its own terms, the clause protects defendants from standing *trial* for an offense for which they have already been placed in jeopardy. *See Abney v. United States*, 431 U.S. 651, 661 (1977). "[I]f a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the

-17-

indictment must be reviewable before that subsequent exposure occurs." *Id.* at 662

(emphasis added).

Third, the same reasoning applies to interlocutory review of motions asserting

immunity under the Speech or Debate Clause, which guarantees that members of

Congress shall not be "questioned in any other Place"—i.e. in court—"for any Speech or

Debate in either House.". U.S. Const. Art. I, § 6, cl. 1. The Supreme Court has noted

that just as the Double Jeopardy Clause protects individuals against being twice put to

trial for the same offense, "the Speech or Debate Clause was designed to protect

Congressmen 'not only from the consequences of litigation's results but also from the

burden of defending themselves.'" *Helsostski v. Meanor*, 442 U.S. 500, 508 (1979)

(quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam)). The Speech or

Debate Clause, then, grants members of Congress *immunity* from certain prosecutions. A

motion to dismiss an indictment based on this clause is therefore reviewable on

interlocutory appeal in the same manner as a denial of qualified immunity for purposes of

42 U.S.C. § 1983. *See, e.g.*, *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011).

Although the Tenth Circuit has rarely permitted interlocutory criminal appeals that

do not precisely fit one of these three traditional categories, we have done so only when

the asserted right cannot be vindicated after trial, as will be discussed in further detail

below. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1179 (10th Cir. 2010)

(allowing appellant to bring an interlocutory appeal challenging a grand jury subpoena

served on a third party); *United States v. Deffenbaugh Indus., Inc.*, 957 F.2d 749, 754-55

(10th Cir. 1992) (permitting interlocutory review of district court's denial of motion to access the record of the number of jurors concurring in the indictment); *see also United States v. P.H.E., Inc.*, 965 F.2d 848, 855 (10th Cir. 1992) (permitting defendants to immediately appeal the denial of their motion to dismiss an indictment based on an "unusual, perhaps unique confluence of factors:  substantial evidence of an extensive government campaign, of which this indictment is only a part, designed to use the burden of repeated criminal prosecutions to chill the exercise of First Amendment rights").  *But see Angilau*, 717 F.3d at 786 (noting that "[w]hatever the merits of *P.H.E.* under current Supreme Court law," the decision was "very narrow" and did not extend to claims of prosecutorial harassment that did not implicate the First Amendment).

Notably, even if a post-judgment appeal "may afford the defendant only an 'imperfect' remedy," we have declined to entertain interlocutory appeals where "*some* meaningful review is available after trial."  *Wampler*, 624 F.3d at 1335 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009)).

## C. *Analysis*

Defendants ask us to apply the collateral order exception in a context we have not previously addressed:  an appeal from a motion to dismiss an indictment and suppress grand jury testimony based on (1) the Fifth Amendment right to be indicted by a grand jury; (2) the Fifth Amendment privilege against self-incrimination; and (3) the Sixth Amendment right to effective assistance of counsel.  We hold the collateral order exception inapplicable here and consequently dismiss these appeals.

-19-

1.  *Cohen* **Factors**

We may reach the merits of the Defendants' claims only if the district court's order in this case (1) conclusively determined (2) an important issue separate from the merits of the case that (3) will be "effectively unreviewable" once final judgment is entered. *Coopers & Lybrand*, 437 U.S. at 468 & n.10 (citing *Cohen*, 337 U.S. at 546).

The parties appear to agree that the first two requirements are satisfied here. The district court's order (1) conclusively determined that (2) the indictment in this case is substantively valid—an important conclusion that is separate from the Defendants' guilt or innocence. The crucial question centers on the third collateral order requirement: whether the district court's order is "effectively unreviewable" on appeal from final judgment. *Id.* at 468. We conclude it is not.

Defendants have provided no reason why their claims are not reviewable on direct appeal or collateral review. Instead, they argue that because Mr. Calhoun has testified to a grand jury that he was involved in fraudulent conduct, he "cannot effectively defend himself" at trial, and neither can his co-defendants. Aplt. Suppl. Br. at 3. In other words, the Defendants contend their fate at trial is predetermined unless the indictment is dismissed. But they have failed to demonstrate that they could not secure this remedy *after* trial on appeal from a final judgment.

Of course, the Defendants may prefer to avoid the expense of trial in this situation. But the Supreme Court has cautioned that while one might argue that "any claim, particularly a constitutional claim, that would be dispositive of the entire case if decided

-20-

favorably to a criminal defendant, should be decided as quickly as possible," courts must be hesitant to expand the collateral order doctrine lest "the policy against piecemeal appeals in criminal cases . . . be swallowed by ever-multiplying exceptions." *Hollywood Motor Car Co., Inc.*, 458 U.S. at 270; *see also id.* at 269 (noting that interlocutory jurisdiction is not automatic "[e]ven when the vindication of the defendant's rights requires dismissal of charges altogether").

Furthermore, we have specifically held that an improperly denied motion to dismiss can be meaningfully vindicated after trial, because "an appellate court can still undo an unlawful conviction[,] . . . [which] is generally all that's required or permitted by § 1291." *Wampler*, 624 F.3d at 1335 (citing *Mohawk*, 558 U.S. at 106). Here, the Defendants may proceed to trial and, if convicted, raise the same challenges they bring now in hopes of having their convictions overturned.[5] Indeed, the Defendants' Fifth Amendment claims are reviewable on direct appeal. *See, e.g.*, *United States v. Kingston*, 971 F.2d 481, 490-91 (10th Cir. 1992) (reviewing on direct criminal appeal a district court's denial of a defendant's motion to dismiss an indictment on Fifth and Sixth Amendment grounds). Their Sixth Amendment claims asserting ineffective assistance of counsel can and generally must be brought in a habeas action for post-conviction relief under 28 U.S.C. § 2255. *See generally United States v. Galloway*, 56 F.3d 1239 (10th

---

[5] We make no determination as to whether Mr. Davis and Mr. Tucker would independently have standing to bring their claims alleging violations of Mr. Calhoun's personal Fifth Amendment and Sixth Amendment rights.

-21-

Cir. 1995) (en banc). Although these avenues for relief might be "imperfect," *see*

*Wampler*, 624 F.3d at 1335, they are sufficient to bar interlocutory review in this case.

The Supreme Court has instructed against "individualized jurisdictional inquiry,"

instead directing us to focus on "the entire category to which a claim belongs." *Mohawk*

*Indus.*, 558 U.S. at 107 (quotations omitted). Viewing the Defendants' Fifth and Sixth

Amendment claims categorically, we conclude they are fundamentally unlike the three

categories of claims for which the Supreme Court has permitted interlocutory criminal

appeals, all of which involve rights that cannot be vindicated on direct appeal or other

post-conviction review.

## 2. **Defendants' Arguments**

The Defendants acknowledge this case does not fit within one of the three

categories for which the Supreme Court has permitted interlocutory criminal appeals—

(1) motions to reduce bail, (2) motions to dismiss on double jeopardy grounds, and

(3) motions to assert Speech or Debate Clause immunity. *See Hollywood Motor Car Co.*,

458 U.S. at 265-66. But they nonetheless urge us to consider their appeals, arguing (a)

their claims implicate important rights and (b) their cases are similar to two instances in

which the Tenth Circuit has permitted interlocutory criminal appeals.

### a. *Importance and nature of rights*

Defendants argue their claims—particularly under the Fifth Amendment

Indictment Clause—are comparable to claims under the Double Jeopardy Clause, which

are reviewable immediately. *See Abney*, 431 U.S. at 660; *see also Angilau*, 717 F.3d at

786. "Just as a defendant has a right not to be put in jeopardy twice for the same offense," they contend, "he has a right to only be prosecuted by way of a fair jury process." Aplt. Suppl. Br. at 13. Because both rights are equally important, the Defendants argue, both should give rise to interlocutory jurisdiction. We disagree.

The constitutional rights at stake here are important. Moreover, we share the district court's view that "[t]he potential ethical and professional ramifications for the attorneys involved are myriad," and likewise do not condone any conflict of interest in Mr. Calhoun's legal representation. Calhoun ROA, Vol I. at 98. But the collateral order doctrine does not turn on the *importance* of the right asserted. The critical inquiry instead concerns the *nature* of the right and whether it can be vindicated after trial. As discussed above, Defendants' rights in this case can be reviewed on direct appeal or collateral review.

b. *Tenth Circuit cases*

The Defendants also call our attention to two cases in which we permitted interlocutory criminal appeals outside the three categories in which the Supreme Court has done so. We find both of these cases unavailing.

i. <u>*In re Grand Jury Proceedings*</u>

First, the Defendants point to our interlocutory review of a grand jury issue in *In re Grand Jury Proceedings*, 616 F.3d 1172, 1179 (10th Cir. 2010). The appellant in that case was the target of a grand jury investigation. His two attorneys—who were not parties to the appeal—were subpoenaed to appear before the grand jury, and both

-23-

indicated that they were prepared to testify rather than risk contempt. *Id.* at 1176-78.

The appellant moved to quash both subpoenas, contending the attorneys' testimony would implicate the attorney-client and work product privileges and violate his Sixth Amendment right to effective assistance of counsel. *Id.* at 1176. The district court denied his motion but stayed the subpoenas while the appellant appealed. *Id.* at 1178.

This court permitted the appellant to bring his interlocutory appeal pursuant to the *Perlman* rule, which permits a person claiming a privilege to immediately appeal the denial of a motion to quash a grand jury subpoena served on a third party (such as the subpoenaed attorneys in *In re Grand Jury Proceedings*), so long as the appellant is not the subpoenaed witness. *Id.* at 1749; *see Perlman v. United States*, 247 U.S. 7, 13 (1918).

The Defendants contend *In re Grand Jury Proceedings* "recognizes that there are limited circumstances where this Court does have interlocutory jurisdiction to ensure the integrity of the [grand jury] process." Aplt. Suppl. Reply Br. at 5. They argue that their case, like *In re Grand Jury Proceedings*, implicates the Defendants' Sixth Amendment rights and should therefore be immediately reviewable. We disagree.

The holding in *In re Grand Jury Proceedings* is narrow and has not been extended beyond its facts. *See In re Grand Jury Subpoena*, 709 F.3d 1027, 1029-30 (10th Cir. 2013) (refusing to extend *In re Grand Jury Proceedings* to permit interlocutory review for a witness who claimed that his personal Fifth Amendment right was violated by a subpoena that he received in his capacity as corporate record custodian). The specialized *Perlman* rule applies in our circuit only to cases in which "an interlocutory appeal is

sought by an intervenor who claims a justiciable interest in preventing a third party's disclosure of documents or testimony, and the party subject to the subpoena indicates that he or she will produce the records or testify rather than risk contempt." *In re Grand Jury Proceedings*, 616 F.3d at 1179.

The rationale for this rule is plain. Although the denial of a motion to quash a grand jury subpoena is generally not immediately appealable, *see id.* at 1179, the *Perlman* rule provides a narrow exception that applies where the appellant is not the recipient of the subpoena. Interlocutory review is necessary in such a circumstance because unlike a subpoenaed witness—who can raise his or her objections to the subpoena on appeal from a contempt citation if necessary—the party asserting the privilege is "without power to prevent the third party from complying with the subpoena." *Id.* In other words, the appellant cannot assert his or her interest in a privilege except by interlocutory appeal because he or she lacks the power to seek recourse on appeal from a contempt citation or other final judgment. *See id.*; *In re Grand Jury Subpoena*, 709 F.3d at 1030.

ii. *United States v. Deffenbaugh Industries, Inc.*

Second, the Defendants cite *United States v. Deffenbaugh Industries, Inc.*, 957 F.2d 749, 754 (10th Cir. 1992). The defendants in that case were indicted on a number of charges, including a count of false statements in violation of 18 U.S.C. § 1001. The district court dismissed that count of the indictment, finding § 1001 was inapplicable to the particular statements defendants had made. *Id.* at 750-52. The Government appealed

the dismissal of the count under 18 U.S.C. § 3731. *See id.* at 750. In response, the defendants brought an interlocutory cross-appeal challenging the district court's order denying the defendants access to the record of the number of jurors concurring in the indictment. The defendants questioned whether the grand jury vote was adequate to support the indictment. *Id.* at 754-55.

Addressing the defendants' interlocutory cross-appeal, we noted that "technical challenges to the grand jury process," such as a claim that an indictment is not supported by enough votes, "are not reviewable upon appeal after trial" because under the Fifth Amendment, the lack of a valid grand jury indictment gives rise to a right not to be tried. *Id.* (citing *Midland Asphalt*, 489 U.S. at 794, 802); *see* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."). This right not be tried is implicated by any "defect so fundamental that it causes . . . the indictment no longer to be an indictment," *Deffenbaugh*, 957 F.2d at 755 (quoting *Midland Asphalt*, 489 U.S. at 802), and an inadequate grand jury vote is one such defect, *id.*

The Defendants contend that the circumstance in this case—where Mr. Calhoun arguably indicted himself by following the advice of counsel operating under a fundamental conflict of interest—is another such defect. We disagree for two reasons: (1) the Defendants' substantive challenges to the indictment here can be vindicated after a final judgment, unlike the defendants' technical claims in *Deffenbaugh*; and (2) we have refused to extend *Deffenbaugh* beyond its peculiar facts.

-26-

1)  *Deffenbaugh*'s technical challenge

*Deffenbaugh* involved "substantial claims attacking the *technical* validity of the grand jury process" that called into question the very existence of an indictment. *Deffenbaugh*, 957 F.2d at 755 (emphasis added).  Specifically, the district court denied the defendants' motion to access the record of the number of jurors concurring in the indictment.  The defendants based their motion on an allegation that there were inadequate votes to support the indictment.  *Id.*  As this court explained, an inadequate vote total is a "fundamental defect" that "causes the indictment no longer to be an indictment."  *Id.*  A defendant indicted by an insufficient number of jurors has not been indicted at all.  The defendant's constitutional guarantee to be free from trial "unless on a presentment or indictment of a Grand Jury," U.S. Const. amend. V, is violated upon being forced to stand trial, much like a defendant's Double Jeopardy Clause right or Speech and Debate Clause immunity.  If the defendant is forced to wait for post-conviction relief, this right cannot be vindicated.

In this case, in contrast, the Defendants do not challenge the existence of a technically valid indictment.  They instead allege the indictment was based on unconstitutionally obtained testimony and therefore invalid as a legal matter.  This is a fundamentally different claim.  The Supreme Court explained why this is so in an opinion rejecting interlocutory appeal of an order dismissing a motion to quash an indictment based on an alleged violation of grand jury secrecy under Federal Rule of Criminal Procedure 6(e):

-27-

[The Grand Jury Clause] does indeed confer a right not to be tried (in the pertinent sense) when *there is no* grand jury indictment. Undoubtedly the common-law protections traditionally associated with the grand jury attach to the grand jury required by this provision—including the requisite secrecy of grand jury proceedings. But that is far from saying that every violation of those protections, like the lack of a grand jury indictment itself, gives rise to a right not to be tried. We have held that even the grand jury's violation of the defendant's right against self-incrimination does not trigger the Grand Jury Clause's "right not to be tried." *Lawn v. United States*, 355 U.S. 339, 349 (1958). Only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried.

*Midland Asphalt*, 489 U.S. at 802 (emphasis added).

Based on the foregoing, the technical challenge to the *existence* of an indictment in *Deffenbaugh* was immediately reviewable; a substantive challenge to an indictment's legal propriety—based on the Fifth Amendment protection against self-incrimination or a similar constitutional guarantee—is not. The latter circumstance does not implicate a "right not to be tried" that cannot be vindicated on direct appeal or collateral review. Defendants have not and cannot show why their challenge to the indictment cannot be vindicated on direct appeal or collateral review.

　　　　2)  *Deffenbaugh*'s limited reach

In addition, our subsequent case law, as well as the Supreme Court's admonishments that the collateral order doctrine is limited in scope, especially in criminal cases, persuade us that *Deffenbaugh* should be read narrowly. *See United States v. Storey*, 2 F.3d 1037, 1042 (10th Cir. 1993) (declining to follow *Deffenbaugh*); *see also Flanagan*, 465 U.S. at 265 (instructing us to interpret the collateral order exception "with

the utmost strictness in criminal cases"); *Angilau*, 717 F.3d at 787 (noting "what appears to be the Supreme Court's increasing reluctance to expand the collateral-order doctrine").

We have refused to extend *Deffenbaugh*'s reach to substantive challenges to an indictment. In *United States v. Storey*, the defendants filed a motion to dismiss an indictment based on two instances of prosecutorial misconduct: (1) a violation of grand jury secrecy under Rule 6(e), and (2) improper remarks made by the prosecutor in front of the grand jury. 2 F.3d at 1038. We did not permit them to bring an interlocutory appeal and specified that *Deffenbaugh* was inapplicable:

> *Deffenbaugh* involved a clear instance in which the existence of a valid indictment per se was at issue. In contrast, in this case the grand jury properly convened and issued a valid indictment. No right to be tried under the Fifth Amendment is involved on these facts.

*Id.* at 1042.

The claims in this case are more similar to the grand jury secrecy and prosecutorial misconduct claims raised in *Storey* than to the technical challenge in *Deffenbaugh*. The grand jury in this case properly convened and issued an indictment. In these circumstances, *Deffenbaugh* is inapplicable, and the Defendants' claims may therefore be raised only after a final judgment. To hold otherwise would open the door to piecemeal criminal appellate litigation contrary to clear authority and instruction from the Supreme Court and the Tenth Circuit.

\* \* \*

We conclude the Defendants have failed to support application of the collateral order doctrine to these appeals.  Mindful of the "Supreme Court's increasing reluctance to expand the collateral-order doctrine," particularly in criminal cases, we hold that we lack jurisdiction to hear this interlocutory appeal.  *Angilau*, 717 F.3d at 787.

## III.  **CONCLUSION**

For the foregoing reasons, we dismiss the Defendants' appeals for lack of jurisdiction.